Case No. 04-14-00483-CV

# IN THE COURT OF APPEAL
## FOURTH SUPREME JUDICIAL DISTRICT
## SAN ANTONIO, TEXAS

## ROWLAND J. MARTIN. APPELLANT
## INDIVIDUALLY AND IN HIS REPRESENTATIVE CAPACITY AS
## ADMINISTRATOR FOR THE ESTATE OF KING

v.

## EDWARD BRAVENEC AND 1216 WEST AVE., INC., APPELLEES

## APPELLANT'S REPLY BRIEF

An Interlocutory Appeal
From Orders Of The 285th Judicial District Court
Bexar County, Texas

Submitted By:

Rowland J. Martin
951 Lombrano
San Antonio, Texas 78207
(210) 323-3849

## IDENTITY OF PARTIES & COUNSEL

1.     Appellant:

Rowland J. Martin
Individually and As Administrator of The Estate Of King
951 Lombrano
San Antonio, Tx 78207

      Represented by:

Pro se

2.     Appellees

Edward Bravenec, the Law Firm of McKnight and Bravenec, 1216 West Ave., Inc.

Represented by:

Glenn Deadman, Esq.
S. 509 Main Street
San Antonio, Texas, 78204

3.     Interested Third Parties Subject To Joinder:

3a.

Bailey Street Properties

      Represented by:

Law Office of McKnight and Bravenec
405 South Flores
San Antonio, Tx. 78205

3b.

Torrabla Properties, LLC
18507 Canoe Brook,
San Antonio, Texas

Office Address:

1626 S.W. Military Dr.
San Antonio, Tx. 78201

      Represented by:

Unknown

i

## APPELLANT'S REPLY BRIEF

Appellant Rowland J. Martin files this document for his brief in reply to the responding brief Appellees filed on March 2, 2014. Due to the need to address unresolved issues about an apparent fraud on the court by Appellee Edward Bravenec and his Attorney Of Record Glenn Deadman, Appellant previously filed a supplement briefing on February 19, 2014, in which Points of Error Six Through Twelve are alleged, and a motion for judicial notice and special exception to non-suit with prejudice the part of the proceeding that appeals the order of the trial court granting temporary injunctive relief. Due to the extenuating circumstances and related important matters of first impression for the Court's TCPA jurisprudence, Appellant respectfully requests a waiver of rules governing volume limits in the interest of discharging his duty of candor to the Court, and limits his reply brief presentation to the single issue presented by the trial court's order denying his Texas Citizen's Participation Act motion to dismiss. If the Court declines to accept the brief as filed, Appellant in that event respectfully requests notice and opportunity to conform his reply the Court's instructions.

## APPELLANT'S REPLY BRIEF

Appellant Rowland J. Martin files this document for his brief in reply to the responding brief Appellees filed on March 2, 2014. Due to the need to address unresolved issues about an apparent fraud on the court by Appellee Edward Bravenec and his Attorney Of Record Glenn Deadman, Appellant previously filed a supplement briefing on February 19, 2014, in which Points of Error Six Through Twelve are alleged, and a motion for judicial notice and special exception to non-suit with prejudice the part of the proceeding that appeals the order of the trial court granting temporary injunctive relief. Due to the extenuating circumstances and related important matters of first impression for the Court's TCPA jurisprudence, Appellant respectfully requests a waiver of rules governing volume limits in the interest of discharging his duty of candor to the Court, and limits his reply brief presentation to the single issue presented by the trial court's order denying his Texas Citizen's Participation Act motion to dismiss. If the Court declines to accept the brief as filed, Appellant in that event respectfully requests notice and opportunity to conform his reply the Court's instructions.

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL............................................................i

TABLE OF CONTENTS....................................................................................iii

STATEMENT OF THE FACTS..........................................................................1

ISSUE PRESENTED...........................................................................................3

LEGAL STANDARDS........................................................................................3

SUMMARY OF ARGUMENT............................................................................7

ARGUMENT AND AUTHORITIES..................................................................9

I.      Appellees Err In The First Instance By Asking The Court To Construe The TCPA In A Manner That Narrows The Scope Of The Communications Referenced In The Text Of The Act...........................................................................................................9

II.     Appellees' Brief Fails On TCPA's First Prong By Neglecting To Controvert Appellant's Fifth Point Of Error And Preponderant Evidence Establishing The Exercise Of The Right To Free Speech And The Right To Petition..........................10

III.    Appellees' Brief Confirms That They Defaulted On TCPA's Second Prong By Presuming Erroneously That They Were Exempt From The Burden Of The TCPA's Clear And Specific Evidence Standard.......................................................................12

IV.    Appellee's Brief Omits To Allege A Rebuttal Of Collateral And Deed Estoppel Defenses And To Explain Why Their Omission In Trial Court Should Be Excused On Appeal .................................................................................................................15

        A.     The Collateral Estoppel Issues.......................................................16
        B.     The Deed Estoppel Issues..............................................................20

V.     The Case Presents Issues Of Vital Importance For Uniformity In Anti-SLAPP Dismissal Proceedings And For Observance Of Automatic Stay Requirements By The Bexar County District Courts..........................................................................22

CONCLUSION...................................................................................................24

CERTIFICATE OF SERVICE..........................................................................25

CERTIFICATE OF WORD COUNT.................................................................25

APPENDIX

## STATEMENT OF THE FACTS

On January 12, 2015, Appellant filed his opening brief and on March 2, 2015, Appellees filed a responding brief. Appellant's Opening Brief shows in the Sixth Point of Error that the claimed purchase money lien interest touched and concerned the land at the time Bravenec's grantor purchased it, that his dispute with the Appellant arises from a prior attorney client relationship involving vertical and horizontal privity, and that the lis pendens notices in question ultimately enabled the contracting parties to exercise rights they already to treat Appellant's lien claim as one that runs with the land. There is no dispute discernible from the Appellees' brief on the matter that their legal action for tortious interference with contractual relations was prompted by a certain published notice of apparent liability for purchase money lien claims, a perfected notice of lis pendens referring to the purchase money lien claim, and contemplated future communications in and out of court for the purpose of enforcing the lien claim. The only question they raise was whether these communications involve the exercise of the right to speech and to petition sufficient to invoke the protection of the Texas Citizen's Participation Act.

According to Appellees, the TCPA is inapplicable because "one can infer that Martin simply found a section of a statue [sic] that provided an automatic stay and through [sic] the same into a briefing·not supported by any case [sic] of action in a live pleading." *Appellees' Brief at para 56, p. 25*. Appellees also appear to allege that Appellant's pleading is nullified by a fatal defect. They seem to imply either that the defect nullifies the pleading, or that a moving party has the burden to allege a predicate cause of action to qualify for TCPA relief. Although difficult to interpret both in substance and form, Appellant construes the Appellees' brief to allege that Appellant's motion to dismiss was insufficient to place them on notice that their action lies within the scope of the TCPA, and that this relieved them of the TCPA burden to

1

them to prove every element of their prima facie claims for tort liability under the clear and specific evidence standard.

To establish the supposed legal basis for their contentions, Appellees argue in pertinent part as follows:

> The Texas system of pleadings is composed of petitions and answers... The pleadings define the suit, give notice of the facts and legal theories of the case, guide the trial court in admitting evidence and in charging the jury, restrict the trial court in rendering the judgment an[d] form the basis for appellate review ... When there is no pleading, there can be no judgment ... Further, it is not proper to admit evidence unless it is addressed or bares upon some issue raised by the pleadings ... There can be no fact issue as a result of a non-plead cause of action.

*Appellees' Brief at para. 52, p. 23-24.* Though correct on the law, Appellees' brief omits to allege the filing of a formal responsive pleading in response to the TCPA motion to dismiss, and also neglects to explain the omission. Instead, they assert the unsupported fact theory that Bravenec's chain of title related back to a foreclosure on October 3, 2003, and ask the Court instead to give dispositive effect to the typographical error in Appellant's TCPA motion to dismiss. These arguments are raised for the first time on appeal after Appellees waived the opportunity to plead opposition to TCPA dismissal in the trial court by way of a formal pleading.

Although Appellees' brief does repeat the res judicata arguments they raised in the trial court to support the tortious interference claim, it offers no direct evidence and legal authority to controvert Appellant's collateral estoppel defense or the related claim of a third party purchase money lien interest in the subject property of the dispute. In this regard, their res judicata argument amounts to a difference of opinion with Appellant about the meaning of *Martin v. Grehn*, Case No. 13-50070. In this regard, Appellant attaches dispositive significance to the fact the Appellees' brief fails to explain how the presumed res judicata effect of the judgment in *Martin v. Grehn* would even plausibly substantiate every element of their prima facie case for

2

tort liability in light of a non-final pending appeal in *Martin v. Bravenec,* Case No. 14-50093. By all indications, Appellees' TCPA showing is predicated in its entirety on a legal theory that omits to differentiate claim preclusion doctrine ("res judicata") from issue preclusion doctrine ("collateral estoppel"), and which offers no legal or evidentiary basis as such from which to discern a nexus with the "interference" element or any other element of their claims for tort liability. Thus, the record is now ripe for the Court to determine whether the trial court erred in agreeing with Appellees that Appellant's speech as attacked by their tort liability claims is inherently ineligible for TCPA protection.

## ISSUE PRESENTED

If the Appellees TCPA showing is insufficient as Appellant contends here, in his original Fifth Point of Error, and in ancillary pleadings, the invalidity their cause of action for tort liability necessarily moots the need to argue further about whether the temporary injunction order was a void ab initio post-stay gag order as alleged. In the interest of simplifying the appeal, the sole issue presented for the Court's consideration for reply brief purposes is this:

> Whether the Appellees' responding brief sustains their burden to show, consistently with applicable standards of review, that they produced clear and specific evidence of every element of their prima facie case for tort liability, and that they rebutted Appellant's defenses based on collateral and deed estoppel, in the dismissal proceeding below?

## LEGAL STANDARDS

The TCPA provides in pertinent part that if a legal action is "based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association, that party may file a motion to dismiss the legal action." Tex.Civ.Prac. & Rem.Code Ann. § 27.003 (West Supp.2014). To prevail on a TCPA motion to dismiss, the movant bears the initial burden to show by a preponderance of the evidence that the plaintiff's action is covered. The party who brought the action can avoid dismissal if he or she "establishes by clear and specific

3

evidence a prima facie case for each essential element of the claim in question." *Id.* If the motion

is denied, the moving party is authorized to commence an interlocutory appeal which has the

effect of staying all trial court proceedings. Tex.Civ. Prac. & Rem.Code Ann. Section 51.014.

Every Texas court of appeals to address the standard of review for the first prong of the

TCPA burden shifting analysis, including the Fourth Court of Appeals, has concluded that de

novo review applies. *Rio Grande H2O Guardian v. Robert Muller Family P'ship Ltd.,* No. 04-

13-00441-CV, 2014 WL 309776, at *2 (Tex. App.—San Antonio Jan. 29, 2014, no pet.) (mem.

op.).[1] In *Farias v. Garza,* 426 S.W.3d 808 (Tex. App.—San Antonio 2014, pet. filed May 6,

2014) (reversing trial court's refusal to dismiss) this Court held in regard to the second prong that

"… the proper standard is to 'determine de novo whether the record contains a minimum

quantum of clear and specific evidence that, unaided by inferences, would establish each

essential element of the claim in question if no contrary evidence is offered." *Id., citing Rehak*

*Creative Servs., Inc. v. Witt,* 404 S.W.3d 716, 726 (Tex.App.-Houston [14th Dist.] 2013, pet.

denied); Tex. Civ. Prac. & Rem.Code § 27.005(c). *Newspaper Holdings, Inc. v Crazy Hotel*

*Assisted Living,* 2013 WL 1867104, at *6 (examining pleadings and evidence to determine

whether plaintiffs marshaled any "clear and specific" evidence to support each alleged element

of their causes of action). TCPA 27.006(a) further provides that "[i]n determining whether a

legal action should be dismissed under [the TCPA], the court shall consider the

---

[1]    *See also, Kinney v. BCG Attorney Search, Inc.,* No. 03-12-00579-CV, 2014 WL 1432012, at *3
(Tex. App.—Austin Apr. 11, 2014, no pet. h.) (mem. op.) (concluding parties' issues present "matters of
statutory construction" and are reviewed de novo); *Sierra Club v. Andrews Cnty.,* 418 S.W.3d 711, 715
(Tex. App.—El Paso 2013, pet. filed); *Whisenhunt v. Lippincott,* 416 S.W.3d 689, 695–96 (Tex. App.—
Texarkana 2013, pet. filed); *Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.,* 416 S.W.3d
71, 80 (Tex. App.—Houston [1st Dist.] 2013, pet. denied); *KTRK Television, Inc. v. Robinson,* 409
S.W.3d 682, 688 (Tex. App.— Houston [1st Dist.] 2013, pet. denied); *Rehak Creative Servs., Inc. v. Witt,*
404 S.W.3d 716, 725 (Tex. App.—Houston [14th Dist.] 2013, pet. denied).

pleadings and supporting and opposing affidavits stating the facts on which the liability *or defense* is based." Id. (emphasis added).

In *James, et al, v. Calkins*, Case No. 01-13-0018-CV (Tex. App. – Houston [1st Dist.] August 21, 2014, the court of appeals noted that evidence of a communication made in connection with a judicial proceeding in the form of a notice of lis pendens satisfies the requirement to show that claims in the underlying case are based on, related to, or are in response to appellants' exercise of the right to petition as defined by the TCPA Sections 27.001(4)(A)(i) and 27.005(b):

> ... [A]ppellees' ... claim is "based on, relates to, or is in response to" the lis pendens filed by [Appellant] with the Harris County clerk that gave notice of her claims against [Appellee] in the 61st District Court lawsuit, which seeks to cancel his transfer of [the beneficiary's] home to a trust controlled by him. All of these are "communication[s] in or pertaining to a judicial proceeding." See id. § 27.001(4)(A)(i). Appellees argue that that these actions cannot be constitutionally protected, but the cases they cite do not apply the TCPA, or do not involve communications of the type at issue here. Accordingly, we hold that appellants met their initial burden to prove that appellees' legal action related to their exercise of the right of petition. See id. § 27.005(c).

The holding in James is consistent with the national trend in Anti-SLAPP litigation which treats lis pendens speech as a covered communication for Anti-SLAPP purposes. *See, Park 100 Investment Group v Ryan*, Case No. B208189 (Cal. App. 2nd Dist. 2009); *La Chappelle v. Superior Court of Riverside County*, Case No. E058014 (Cal. App. 4th Dist. 2013) (mandamus proceeding reversing lis pendens expunction).

In *Pickens v. Cordia*, Case, No. 05-13-00780-CV (Tex, App. – Dallas 2014), the court of appeals noted that the "exercise of free speech" is also defined as a "communication made in connection with a matter of public concern." Id. § 27.001(3). A "matter of public concern" includes an issue related to "(A) health or safety; (B) environmental, economic, or community well-being; (C) the government; (D) a public official or public figure; or (E) a good,

5

product, or service in the marketplace." TEX. CIV. PRAC. & REM. CODE § 27.001(7). The Pickens court held that a matter can be a public issue "because people in the public are discussing it or because people other than the immediate participants in the controversy are likely to feel the impact of its resolution." *Id. citing Miranda v. Byles*, 390 S.W.3d 543 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). Other courts reviewing Anti-SLAPP litigation have found that matters of public concern include speech addressed to the quality of legal services provided by a member of the state bar, *Avila v. Larrea*, 394 S.W.3d 646 (Tex. App.—Dallas 2012, pet. denied); viewpoints on issues about compliance with canons of judicial conduct, *Cortez v. Johnston*, 378 S.W.3d 468 (Tex. App.—Texarkana 2012, pet. denied) (strong matter of public concern involving a member of the state judiciary); and viewpoints about the efficacy of public policy responding the mortgage industry crisis, *Mortgage-Specialists, Inc. v. Implode-Explode Heavy Industries, Inc.*, 999 A.2d 184 (N.H. 2010). (anti-slapp case involving mortgage dispute).

The TCPA also provides rules of construction that the courts of appeals are obligated to observe in appeals from denials of dismissal relief. For example, Subsection 27.011 (a) states that "[t]his chapter does not abrogate or lessen any other defense, remedy, immunity, or privilege available under other constitutional, statutory, case, or common law or rule provisions," and Subsection (b) states that "[t]his chapter shall be construed liberally to effectuate its purpose and intent fully." *Id.* Section 27.011 preserves collateral estoppel defenses, as indicated in *Charalambopoulus v. Grammer*, Civil Action No. 3:14-CV-2424-D (N.D. Tex. January 29, 2015), a TCPA decision acknowledging that in a proper case, the moving party's assertion of issue preclusion supports an automatic right to dismissal, although the court there concluded that the moving party failed to establish the doctrine applied. Section 27.011 preserves rules under the United States and Texas Constitutions that prohibit prior restraints on free speech. See U.S.

CONST. amend. I; TEX. CONST. art I, §8. A prior restraint is a judicial order forbidding certain communications when issued in advance of the time that such communications are to occur. *See Alexander v. U.S.*, 509 U.S. 544, 550 (1993). A prior restraint of expression bears "a heavy presumption against its constitutional validity." *See In re Newton*, 146 S.W.3d 648, 653-54 (Tex. 2004). The guiding purpose behind the preservation of these defenses and rules of construction is to afford a qualified moving party a substantive immunity from suit, *Batzel v. Smith*, 333 F.3d 1018,1025 (9th Cir. 2003), *cert. denied* 541 U.S. 1085 (2004), which in the context of the TCPA, is intended to "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time protect the rights of a person to file meritorious lawsuits for demonstrable injury." Tex. Civ.Prac. & Rem.Code Ann. § 27.002.

## SUMMARY OF ARGUMENT

Appellant's opening brief thoroughly addressed Appellees' issue on whether the trial erred by granting gag order relief on July 17, 2014. The opening brief was then augmented in a supplemented briefing submission, and by way of a motion for special exceptions in Case No. 04-14-00483-CV, and a motion to reinstate his petition for extraordinary relief in Case No. 04-14-00841-CV. In the current state of the record, Appellant submits that the Appellees' submission on TCPA burden shifting requirements is the only issue the Court needs to consider to dispose of the appeal. Careful examination of the Appellees' briefing reveals that they err in general by asking the Court to adopt a construction that obscures the definition for communications set forth in TCPA Section 27.005. The first prong of their TCPA analysis fails to withstand scrutiny under the de novo review standard because it fails to establish that the subject matter of their legal actions for tort liability falls outside the scope of the communications covered by Section 27.005. The second prong of their analysis fails for legal

7

insufficiency under the TCPA's clear and specific evidence standard because it relies substantially on adverse inferences, and without regard to the fact that Appellees' voluntarily waived the opportunity to file a responsive pleading to address every element of the claims for tort liability they assert. Even if Appellees could prevail on the first and second prong, which they cannot, their brief makes no plausible attempt to controvert Appellant's collateral and deed estoppel defenses with cognizable evidence and legal authority. Under the circumstances, the only conclusion one can plausibly reach consistently with the guiding principles of the TCPA – and the conclusion that Appellees should have reached before they filed their case - is that Appellees' legal action to suppress future lis pendens speech is utterly repugnant to First Amendment values and subject to mandatory dismissal under the TCPA as such. Under the circumstances, Appellees' issue about whether the trial court erred in granting temporary injunctive relief is functionally mooted by their lack of standing to maintain the underlying cause of action whatsoever for tort liability.

## ARGUMENT AND AUTHORITIES

I.  **Appellees Err In The First Instance By Asking The Court To Construe The TCPA In A Manner That Narrows The Scope Of The Communications Referenced In The Text Of The Act.**

An important threshold matter concerning the proper statutory construction of the TCPA is presented by Appellees' legal theory proposing to exclude coverage of Appellant's lis pendens speech based on a pleading defect they neglected to raise during their appearance in the trial court. Their construction "creates an absurdity [on appeal] by drawing an artificial distinction within the class of defendants the TCPA was designed to protect regardless of whether they suffered the harm for which the legislature addressed by enacting the TCPA." *San Jacinto Title Services of Corpus Christi, LLC. v. Kingsley Properties, LP,* 2013 WL 1786632, *5 (Tex.App.-Corpus Christi April 25, 2013, pet. denied). Their construction should be summarily rejected in

8

the first instance because the TCPA imposes no requirement for the moving party to allege a cause of action, as Appellees' brief appears to suggest, but instead merely requires the moving party to invoke TCPA immunities by alleging that the legal action by the plaintiff was in response to the exercise of the right to speech and to petition by the moving party. Further, a typographical error in a motion to dismiss, such as the one Appellees cite in their brief relating to an event in the chain of title to the subject property, has no bearing whatsoever on the overall justiciability of a motion to dismiss in which a lis pendens communication in judicial proceeding covered by 27.005(c) is properly alleged as the predicate for TCPA review.

In *Charalambopoulus v. Grammer*, *Id.*, the Court noted that under Texas law publications made in the course of judicial and quasi-judicial proceedings are absolutely privileged. This "mean[s] that any statement made in the trial of any case, by anyone, cannot constitute the basis for a defamation action, or any other action." *Hernandez v. Hayes*, 931 S.W.2d 648, 650 (Tex. App. 1996, writ denied) (citing James v. Brown, 637 S.W.2d 914, 916 (Tex. 1982) (per curiam); *Reagan v. Guardian Life Ins. Co.*, 166 S.W.2d 909, 912 (1942)). The *Charalambopoulus* court noted that the judicial proceedings privilege is "tantamount to immunity," and, where there is an absolute privilege, no civil action in damages for oral or written communications will lie, "even though the language is false and uttered or published with express malice." *Id.* "The scope of the absolute privilege extends to all statements made in the course of the proceeding ... and attaches to all aspects of the proceeding, including statements made in open court, hearings, depositions, affidavits, and any pleadings or other papers in the case." *Id.* As indicated by *James, Id.*, the privilege ordinarily extends to the recording of a notice of a lis pendens which simply documents that the interest of the grantor passes to the pendent lite purchaser subject to a determination by the court. *Cherokee Water, Co. v Advance Oil & Gas, Co.*, 843 S.W. 2d 132, 135 (Tex. App. –

9

Texarkana 1992, writ den'd). Because the privilege extends to statements made in contemplation of, and preliminary to, judicial proceedings, it would arguably cover the filing of pre-litigaiton notices, such as Appellant's notice of apparent liability for purchase money claims, that precede the lis pendens filing. *See, Watson v. Kaminski*, 51 S.W.3d 825, 827 (Tex. App. 2001, no pet.).

Even if there were no on-going judicial proceedings, moreover, the issues of public concern qualify for coverage both under TCPA Section 27.005 and Section 8 of the Bill of Rights of the Texas constitution: "Every person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege; and no law shall ever be passed curtailing the liberty of speech or of the press. In prosecutions for the publication of papers, investigating the conduct of officers, or men in public capacity, or when the matter published is proper for public information, the truth thereof may be given in evidence. " Id.

Under the circumstances, the Appellees' brief is suspect on its face. The mere fact that Appellees assert the right to maintain an independent cause of action to categorically enjoin unpublished speech pertaining to a still pending case, and now argue on appeal that the Court should unilaterally narrow the scope of the communications referenced in the text of the Act, both strongly suggest that they are not parties to a meritorious lawsuit involving a demonstrable injury as inferred from their arguments about res judicata by the trial court. *Cherokee Water, Id.*

## II. Appellees' Brief Fails On The TCPA's First Prong By Failing To Controvert Appellant's Fifth Point Of Error And Preponderant Evidence Of Appellant's Exercise Of The Right To Free Speech And The Right To Petition.

Appellees purport to maintain causes of action for tortious interference with contractual relations and fraud, but regardless of what labels they use to allege tort liability, the dispositive factors on the TCPA's first prong are the existence of published communications in a judicial proceeding in the form of lien and lis pendens notices , and communications about matters of

public concern both published and unpublished, both of which undoubtedly fall within the scope of TCPA protection. Appellees' presentation at the hearing on July 9, 2014 removes all doubt that their action was in response to and based on the exercise of the right to speech and to petition, as shown by Attorney Deadman's colloquy with the trial court in which he explains the rationale for the language of the gag order he drafted for signature by the trial court:

> THE COURT: " ... my intent was to draft the order as broadly as possible. I did not intend the language [to] quote that phrase 'being given its broadest terms' to be included in the order. Why is it in there?"
>
> MR. DEADMAN: "The only reason that's in there ... [is] the lengthy history in this case ..."
>
> THE COURT: " ...I don't know that you need that particular language in the Order. I don't want to make it so broad that it's subject to constitutional challenge ...."

*See, Court Reporters' Transcript for July 17, 2014, at p. 13-14.* Appellees' reliance on the same line of arguments to oppose TCPA dismissal as they presented to secure temporary injunctive relief from present and future lis pendens speech was self-defeating for their attempts to avoid a shifting of the burden, but that does not alter the factual basis for their motivation to litigate or the coverage under the TCPA resulting from it.

Applying the both prongs of the criteria for TCPA coverage, it is evident from the Appellees' own testimony and evidentiary submissions in support of temporary injunctive relief that, at bottom, their entire litigation revolves Appellant's exercise of the right to free speech and to petition. The gravamen of Appellees case, by their own account, lies in their interests in enjoining future lis pendens speech and in resolving a difference of opinion with the Appellant about the res judicata effect of the judgment for Bravenec in Martin v. Grehn and the collateral estoppel effect of the federal court's final order declining jurisdiction to expunge an earlier lis pendens filing noticing Appellant's purchase money claims. See Defendants' Exhibit 2. At the

same time, the underlying speech which the Appellee's suit places in dispute implicates every matter of public concern known to the TCPA.

Under any realistic construction to effectuate the purposes of the TCPA, Appellant's speech can and should be deemed to encompass a request for adherence to disciplinary rules of professional responsibility, and for observance of jus cogens standards of judicial conduct, that directly or indirectly touch every category of public concern known to the TCPA Section 27.005, including "safety" from alleged deprivations of due process, the effect of judicial branch operations on "economic and community well-being", "government accountability," Bravenec's conduct as a "public figure," and the quality of legal services in the marketplace provided by him and his firm. The public clearly had a right to know that a candidate for judicial office was suing a former client, and was at the same time facing claims for legal malpractice himself arising from a former attorney-client relationship. The public also stands to be affected by the resolution of issues concerning the conflict between the State and the Fifth Circuit on laws governing post-petition foreclosures and suspect lien assignments. Thus, even if Appellees had filed a written response to the TCPA motion to dismiss, they would still have no realistic basis for disputing that the underlying subject matter of Appellant's speech involves matters of public concern, both in the sense that people other than the parties to this controversy are likely to feel the impact of its resolution, and that there is on-going public discussion on these topics.[2]

III. **Appellees Brief Confirms That They Defaulted On The TCPA's Second Prong By Presuming Erroneously That They Were Exempt From The Burden Of The TCPA's Clear And Specific Evidence Standard.**

As the appellees in an interlocutory appeal pursuant to TCPA Sections 27.003 and

---

[2]    See e.g., Hon. Catherine Stone and Wendy Martinez, "Caperton v. Massey Coal Co.: The Texas Implications," *St. Mary's Law Journal,* 2010. Available at http://stmaryslawjournal.org/pdfs/Stone.pdf. See also, "Feds want secret audio at trial; Informant, now dead, helped obtain it," San Antonio Express News, March 20, 2015, at p. A-3 (reporting on a pending federal case related to a local attorney's felony conviction arising out of corrupt litigation in a state district court).

51.014(a)(12), their burden was to comply with the TCPA's clear and specific evidence standard. This they failed to do. Due to Appellees' waiver of responsive pleadings, there is nothing in the trial court record to document their compliance with the TCPA's requirement that they establish every element of their prima facie case for tort liability with clear and specific evidence. Appellee's resort to back-door arguments for exemptions from TCPA coverage, that the Court should "infer that Martin simply found a section of a statue [sic] that provided an automatic stay and through [sic] the same into a briefing not supported by any case [sic] of action in a live pleading," is both legally non-justiciable under the heightened standards noted in *Farias* and factually absurd as a response to Appellant's twelve points of error and motion for special exceptions based on a fraud on the court below. It suffices to say that Appellees' fail to distinguish the relief they sued to obtain from an explicit request for unlawful prior restraints. *Markel v. World Flight, Inc.,* 938 S.W.2d 74 (Tex. App.-San Antonio 1996, no writ).

Further, whether analyzed under the label of tortious interference with contractual relations, or as a fraudulent filing of a public record, Appellees' core arguments about tort liability fails to pass muster of the facts of this case. The court in *Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.,* 416 S.W.3d 71; (Tex. App – 1st Dist. – Houston 2013) disposed of the tortious interference claim comparable to the one under review here with the following holding: "To establish a cause of action for tortious interference, a plaintiff must prove that (1) a contract subject to interference exists, (2) the defendant committed a willful and intentional act of interference with the contract, (3) the act proximately caused injury, and (4) the plaintiff sustained actual damages or loss ...Ordinarily, merely inducing a contract obligor to do what it has a right to do is not actionable interference." Id. On this basis, the court of appeals there reversed a trial court order denying the defendant's TCPA motion to dismiss. Here,

13

Appellees' offer no argument to explain why the transfer of the subject property to Torralba Properties makes this case distinguishable from the one in Newspaper Holdings, Id.

The court of appeals in James, Id. disposed of a fraud claim identical to the one asserted by Appellees pursuant to Tex. Civ. Prac. & Rem. Code Section 12.002(b) with the following holding: "Appellees claimed ... that appellants knew that the lis pendens was fraudulent when it was filed and that [one appellant] admitted under oath that she knew that the lis pendens was fraudulent. But no evidence supports these assertions, and [c]onclusory statements are not probative and accordingly will not suffice to establish a prima facie case ... The evidence shows that that the lis pendens provided notice of the pendency of the 61st District Court lawsuit, which requested a declaratory judgment that a 2007 deed conveying [a] home to a trust creadted and controlled by [appellee] is invalid." James, Id. at p. 28. Here, the probative evidence flowing from Bravenec's testimony on July 9, 2014 established mainly that he lacked capacity to differentiate truth and falsity in the context of his purported action for fraud.

The arguments offered by Appellee are far more obscure and deceptive because, unlike the respondent in Newspaper Holdings and James, they waived the opportunity to file a written response to Appellant's TCPA motion to dismiss, and instead relied on a showing calculated to demonstrate why present and future lis pendens speech should be enjoined. As plead in paragraphs 10, 37, 38, 50 and 51 of their brief, moreover, Appellees purport to maintain their causes of action for tortious interference with contractual relations and fraud on theory that Bravenec's chain of title began with a foreclosure sale transaction on October 3, 2003 which they suppose to be wrongfully clouded by Appellant's lis pendens filings in 2014. In paragraph 10, for example, Bravenec specifically asserts that his chain of title to the subject property began on October 3, 2003 with a foreclosure sale transaction executed by the late Albert McKnight.

14

Thereafter, he incorporates the same fact issue in paragraph 50 in support of his second issue, defending the trial court's order denying dismissal pursuant to the TCPA. *See also Appellees' Brief at paras. 3, 13, 26 and 43.* For his second issue, whether the trial court erred by ordering the denial of TCPA dismissal relief, Bravenec alleges essentially in paragraphs 51 – 56 that Appellant waived immunity from suit due to a defective TCPA motion to dismiss, and that the trial court's denial of TCPA dismissal relief was proper because "numerous courts," allegedly including the U.S. District Court for the Western District of Texas in Case No. SA 11-CV-0414 and the U.S. Court of Appeals in Case No. 13-50070, adjudicated the supposed October 3, 2003 foreclosure transaction. No authority is cited for the latter proposition, and TCPA authorities on point such as *James* and *Charalambopoulus* expressly reject their conclusions.

## IV. Appellee's Brief Omits To Allege A Rebuttal Of Collateral And Deed Estoppel Defenses And To Explain Why Their Omission In Trial Court Should Be Excused On Appeal.

TCPA 27.006(a) provides that "[i]n determining whether a legal action should be dismissed under [the TCPA], the court shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability *or defense* is based." (emphasis added). Careful examination of the record indicates that Appellees are, and should be, precluded by collateral and deed estoppel from asserting claims for tort liability that are inconsistent with the outcome of past litigation and the transactional details of the chain of title. On cross-examination about the reasoning behind his legal theory, Bravenec not only confirmed that Appellant's former exercise of the right to petition forms the basis of his suit, but admitted facts that supports Appellant's use of collateral estoppel as a defense to his claims for tort liability based on the federal court order in Defendant's Exhibit 2 that denied his final motion for expunction and contempt in *Martin v. Grehn* on March 5, 2014:

15

Q.      … Were you not aware that you would be collaterally estoppel from raising those issues [about res judicata bars] in a state court forum?

A.      I don't think that collateral estoppel would apply to me, so no, I don't agree with that.

Q.      How do you explain [that]?

A.      Well, collateral estoppel would be against the losing party. And so we are the prevailing party. So my interpretation of collateral estoppel … [is] that you were collaterally estopped from asserting what is essentially a matter that had already been decided in Federal Court [and] in Probate Court. So I think that was our argument.

Q.      Very well. But [Judge Hudspeth's] order denied you relief, the relief you requested, did it not?

A.      It did.

Q.      Okay. So you were the losing party on this motion; is that correct?

A.      On that one motion, [I] certainly was.

*Court Reporters' Transcript for July 9, 2014, pp. 39 (lines 17 – 25) to 40 (lines 1 – 11).*

Elsewhere, when asked to specify where the record of *Martin v. Grehn* contained textual references disposing of purchase money issues in Appellees' favor, he stated "I cannot show you." *Court Reporters' Transcript for July 9, 2014, at p. 46, lines 13 – 16.* In short, Appellees filed a general denial to Appellant's counterclaims in Case No. 2014-CI-07644, specifically testified to their inability to allege facts to defeat Appellant's use of collateral estoppel for offensive purposes and for defensive purposes, and then failed on appeal facts to controvert estoppel by deed. Under the circumstances, Appellees' actions attributing tort liability to the Appellant are simply wrong on the law and wrong on the facts. *See Appendix.*

A.      **The Collateral Estoppel Issues**

The major implication of Bravenec's testimony - that there is no such thing as the defensive use of collateral estoppel by parties on the losing end of a judgment - is simply

16

preposterous, and reflects a common misconception about the meaning of collateral estoppel doctrine. *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627 (Tex. 1992). Offensive collateral estoppel describes when a plaintiff seeking to estop a defendant from relitigating an issue which the defendant previously litigated and lost in a suit involving another party. *See Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). Defensive collateral estoppel occurs when a defendant seeks to prevent a plaintiff from relitigating an issue the plaintiff has previously litigated unsuccessfully in another action against the same or a different party. *United States v. Mendoza*, 464 U.S. 154, 159 n.4 (1984). Collateral estoppel is further differentiated according to mutuality versus non-mutuality, i.e. whether parties with or without privity assert the estoppel bar, and whether the basis for the alleged estoppel rests on legal and evidentiary factors. *See United States v. Mollier*, 853 F.2d 1169, 1175 n.7 (5th Cir. 1988).

*Charalambopoulus* illustrates an attempted but unsuccessful use of collateral estoppel by a moving party in a TCPA case. There, the Federal Court for the Northern District of Texas ruled for the non-moving party of the Anti-SLAPP motion because there was "no evidence that would enable the court to identify the issues that the [prior court] actually decided," *Id. at p. 62*. The moving party had argued that the non-moving party, a defamation plaintiff, was collaterally estopped from relitigating the issue of whether he engaged in the conduct that the moving party alleged in a prior litigation. However, the non-moving party responded that the claims in the second lawsuit were not "identical" to those the earlier action cited by the moving party, and further that an equitable exception to collateral estoppel was applicable because the moving party fraudulently obtained the Order forming the predicate for the alleged estoppel by presenting false testimony. Lack of evidence and false testimony are non-factors for the collateral estoppel

analysis here. The record evidence shows that Bravenec's overly broad and unqualified arguments from res judicata doctrine in fact relitigate an adverse jurisdictional determination and concomitant refusal to expunge a lis pendens notice that Bravenec challenged in that case. The outcome in that case is corroborated by a U.S. Bankruptcy Court judge, and both orders are consistent with the transactional and chain of title details that form the legal basis of Appellant's collateral estoppel and separate transaction defenses. *Anderson v. Law Firm of Shorty, Dooley & Hall*, 393 Fed. Appx. 214 (5th Cir. Aug. 26, 2010) (applying separate transaction rule of res judicata argument in attorney client dispute ).

The Anti-SLAPP litigation in *Park 100 Investment Group v Ryan*, B208189 (Cal. App. 2nd Dist. 2009) is instructive with respect to Appellant's entitlement to prevail on the collateral estoppel defense asserted here. There, the defendants were attorneys who, in prior lawsuit involving an easement dispute, had filed a lis pendens on a dominant tenement, and were sued by the owners of the dominant tenement who claimed that the lis pendens was wrongfully recorded. On appeal under anti-SLAPP laws, the court of appeals reversed the expunction and denial of dismissal relief, concluding that the filing of the lis pendens was illegal as a matter of law, and that the attorneys were not precluded from asserting the validity of the lis pendens.

Noting that "[c]ollateral estoppel is not an inflexible doctrine," and that "[e]ven if the minimal requirements for its application are satisfied, the doctrine should not be applied if considerations of policy or fairness outweigh the doctrine's purposes as applied in a particular case," the court of appeals reversed the denial of Anti-SLAPP relief as follows:

> ... the courts have recognized that certain circumstances exist that so undermine the confidence in the validity of the prior proceeding that the application of collateral estoppel would be unfair to the defendant as a matter of law. [For example,] application of collateral estoppel is unfair where the second action affords the defendant procedural opportunities unavailable in the first action that could readily cause a different result. .....
> when Judge Treu was first called upon to address the propriety of the lis pendens in

considering the expungement motion, he was not provided with the proper legal authority. His ruling was based upon misrepresentations by both parties as to the state of the law. Both Oviatt and Heron erroneously represented to the court that there was no legal authority in California discussing the propriety of recording a lis pendens on a dominant tenement in an easement dispute.. when Judge Treu rendered his order expunging the lis pendens, the legal issues had not been fully presented and his decision was based on an incomplete and erroneous understanding as to the state of the law. ... new authority provided a "colorable" argument that the recording of the lis pendens was permissible. ... In these circumstances it is inherently unfair to conclude that the orders rendered by Judge Treu, including the expungement order, conclusively establish that the lis pendens was illegal as a matter of law and thus, it is inappropriate to bind attorneys Ryan and Brosman to those rulings ... When the question is one of law rather than a question of fact, a prior conclusion does not prevent a reexamination of the issue, either if injustice would result or if the public interest requires that relitigation not be foreclosed.

*Id. at p. 12 – 15.* The facts here run strikingly parallel to those in *Park.* In the proceeding below, Bravnec persuaded the trial court to indulge a "non-mutual" application of collateral estoppel doctrine, essentially for the benefit of non-party transferees who had not disclosed to the court. Further, the state court case is a second action that affords Appellant the chance to litigate purchase money lien interests, as opposed to mortgagor rights of redemption, as was the case in federal court, the presenting "procedural opportunities unavailable in the first action that could readily cause a different result." *Larry York v. State of Texas,* 373 S.W. 3d 32 (2012); *Chisholm v. Chisholm,* 209 S.W.3d 96, 98 (Tex. 2006).

Thus, whether the Court applies de novo or factual sufficiency for the standard of review makes no difference in this case because the result would be the same under either standard. When asked to show the part of the record in the Martin v. Grehn judgment that supposedly ruled on the purchase money lien claim that forms the basis of Appellant's post-judgment lis pendens speech, Bravenec replied that "I cannot show you." When asked if he knew what was meant by the terminology, "third party purchase money lien," Bravenec replied repeatedly that he did not know what that is. In short, the Bravenec's hearing testimony directly contradicts the factual premises of the Appellees' arguments about res judicata and collateral estoppel, and the

responding brief directly compounds this overt deficiency in the clarity and specificity of Appellees' legal position by referring to October 3, 2003 as the point of origination for Bravenec's chain of title.

## B. The Deed Estoppel Issues

Appellees' responding brief also fails to rebut Appellant's defenses based on estoppel by deed. The lis pendens mandamus case in *La Chappelle, Id.* is instructive with respect to the significance of Appellees' failure to offer argument in rebuttal to Appellant's arguments about estoppel by deed. Not unlike the fact situation here, *La Chappelle* involved a case where purchasers at a nonjudicial foreclosure sale moved to expunge a lis pendens by alleging that the claimant could not establish the evidentiary merit of his claim. In its ruling, the trial court cited the following statement in Miller and Starr (3rd ed.) section 10.208 to support its ruling: "The purchasers title (at a foreclosure sale) . . . is not encumbered by any interest that is created and recorded after the deed of trust, but prior to the date of the foreclosure sale, even if the foreclosure sale purchaser had actual or constructive notice of the intervening lien or interest." *Id at p. 2.* On appeal, the *La Chappelle* court of appeals concluded that the foreclosure judgment was inconclusive about whether or not the underlying deed was void: the lis pendens claimant "stated grounds to set aside the sale based on the invalidity of the trust deed" and "he does claim an interest in the real property so that the trial court erred in expunging the notice of lis pendens." *Id. at p. 4.*

Here, the purchase money lien encumbrance that Appellant noticed in his lis pendens filing was created long before the second deed of trust Bravenc acquired in 2005 and its foreclosure in 2006. Further, here as in *La Chapppelle*, the federal court decision is inconclusive for purposes of the matters in controversy in the pending interlocutory appeal. The simple fact of

the matter is that Bravenec was not the primary beneficiary in Federal Case No. SA 11-CV-0414 – his co-defendants Charles Grehn and Reliant Financial were. Bravenec was a tag along first lien assignee defendant, and a vicarious beneficiary of the judgment for Reliant Financial, due to his role as the plaintiff of trespass to try title suit against Reliant Financial and his acquisition of first lien interest through a foreclosure settlement in that suit. Consequently, the judgment in Federal Case No. SA 11-CV-0414 cannot reasonably be read to offer Bravenec repose from the void order rule. *Chisholm, Id.* In short, Bravenec's testimony fails to controvert evidence of a purchase money lien interest that touched and concerned the land at the time Bravenec's grantor purchased it, but confirms his dispute with the Appellant arises from a prior attorney client relationship involving vertical and horizontal privity, and that the lis pendens notices in question ultimately enabled the contracting parties to exercise rights they already to treat Appellant's lien claim as one that runs with the land.

The fact situation here is also directly analogous to the one in *La Jolla* where a California court of appeals ruled for the Anti-SLAPP movants on two grounds: "First, the absolute privilege … was applicable to the recording of the lis pendens in this case. Second, the evidence of forgery established as a matter of law that the second deed of trust was void and, therefore, appellants never acquired title to the Property. Each of these grounds would be a sufficient basis to conclude that appellants have no probability of prevailing …. " *Id.* In this proceeding, Appellant relies on a void order issue analogous to the one in La Jolla in his capacity as a purchase money creditor rather than as successor to obligor Moroco Ventures, LLC. The void order issue is also raised without limitation in Appellant's recently filed bill of review case challenging Bravenec's probate court order of expunction on public policy factors in Probate Case No. 2001-PC1263, *Zuniga v. Grose, Locke, & Hebdon*, 878 S.W. 2d 313, 318 (Tex. App. San Antonio 1994, writ

21

ref'd), and in a recently filed second bill of review case in the 150th District Court, *Rocha v. Ahmad*, 662 S.W.2d 77 (Tex. App.--San Antonio 1983, no writ). [3]

## V. The Case Presents Issues Of Vital Importance For Uniformity In Anti-SLAPP Dismissal Proceedings And For Observance Of Automatic Stay Requirements By The Bexar County District Courts.

On the facts of this case, the Appellee's brief can and should be disposed based on solely on Appellant's Fifth Point of Error and the general rule that the non-movant must sustain its burden on each essential element of the claim unaided by inferences, presumptions and intendments. *Farias, Id.* In support of the reply brief, Appellant also incorporates by reference the arguments in his Points of Error Nine and Ten arguing that the Appellees secured the temporary injunction order on July 17, 2014 after conditions for a TCPA automatic stay had been satisfied. *Varian Medical Systems, Inc. v. Delfino*, 35 Cal. 4th 180, 192 (2005) appealed in Super. Ct. No. CV780187 (Cal. 2005) (lack of trial court jurisdiction due to appeal in Anti-SLAPP case triggering automatic stay). Although Appellees initially secured their gag order relief relying heavily on the obscure inference that the res judicata effect of *Martin v. Grehn* supplied a cause of action in tort to enjoin published and unpublished speech, Appellees' arguments to the Court in defense of these proceedings depart widely from the guiding principles for appellate review of TCPA appeals.

Specifically, Appellees' brief does allege the filing of a responsive pleading in the record of the dismissal proceeding to rebut TCPA coverage or to substantiate each essential element any claim for tort liability. Bravenec's own testimony affirmatively supports Appellant's offensive and defensive use of collateral estoppel. On appeal, moreover, Appellees' responding brief

---

[3]    See also, 6A C.J.S. ASSIGNMENTS § 132 (2013) ("matters rendering the assignment absolutely invalid . . . , such as ... the nonassignability of the right attempted to be assigned" may be raised); *Reinagel v. Deutsche Bank Nat. Trust Co.*, 735 F.3d 220, 228 (5th Cir. 2013) ("Texas courts follow the majority rule that an obligor can defend "on any ground which renders the assignment void.")

22

removes any doubt about the insufficiency of their trial court showing by advancing a nonsensical reading of the TCPA's burden shifting requirements, and then by concluding with an explicit request for the Court resolve the appeal based on an inference from a single typographical error in the motion to dismiss they failed to contest in the trial court.

In view of the above, Appellant respectfully submits that the Appellees' cause of action for tort liability, and the post-stay gag order they solicited from the trial court in "the broadest possible terms," call for a treatment no different than the treatment the U.S. Supreme Court accorded fifty years ago, in *Stanford v. Texas*, 379 U.S. 476 (1965), to a "constitutionally intolerable" general warrant issued by the 57th District Court, which had similarly authorized the broadest terms possible for a seizure of "books, records, pamphlets, cards, receipts, lists, memoranda, pictures, recordings and other written instruments":

> Vivid in the memory of the newly independent Americans were those general warrants known as writs of assistance under which officers of the Crown had so bedeviled the colonists. The hated writs of assistance … were denounced … as "the worst instrument of arbitrary power, the most destructive of English liberty, and the fundamental principles of law, that ever was found in an English law book," because they placed "the liberty of every man in the hands of every petty officer" … What is significant to note is that this history is largely a history of conflict between the Crown and the press. … In Tudor England officers of the Crown were given roving commissions to search where they pleased in order to suppress and destroy the literature of dissent … This is the history which prompted the Court less than four years ago to remark that "[t]he use by government of the power of search and seizure as an adjunct to a system for the suppression of objectionable publications is not new" … [W]hat this history indispensably teaches is that the constitutional requirement that warrants must particularly describe the "things to be seized" is to be accorded the most scrupulous exactitude when the "things" are books, and the basis for their seizure is the ideas which they contain… The indiscriminate sweep of [the language in the warrant issued by the 57th District Court of Texas] is constitutionally intolerable. To hold otherwise would be false to the terms of the [Bill of Rights], false to its meaning, and false to its history.

*Id. (emphasis and bracketed language added).* Here, as in *Stanford*, though "[t]he world has greatly changed, and the voice of nonconformity now sometimes speaks a tongue which Lord Camden might find hard to understand," the clear purpose of the TCPA paradigm is to guarantee

23

the Citizens of Texas freedom and substantive immunity from the improper and unbridled use of judicial process "as an adjunct to a system for the suppression of objectionable publications," *Id.*, for the same reasons the law 50 years ago protected Bexar County resident and political activist John Stanford from constitutionally intolerable censorship in the 57th District Court.

## CONCLUSION

The Court is respectfully requested to enforce the standards enunciated in *Farias* so as to give effect, not only to the *Stanford* decision's principles on free speech, but to the legacy on matters of "conscience and human dignity" its history reflects. *Id.* Even setting aside the unresolved issues about fraud on the court by Attorneys Bravenec and Deadman, as set forth in Appellant's Points of Error Six Through Twelve which are incorporated here by reference, *see Wilson v. Parker, Covert & Chidester*, 28 C4th 811, 123 CR2d 19, 24 Civ LR 242 (Sept. 2002) (Anti-SLAPP case discussing fraud on the court) (available on-line), the Appellees' ill-conceived cause of action to enjoin lis pendens speech is fully deserving of dismissal because their responding brief defending it represents what is quite possibly the most baseless legal argument for opposing an Anti-SLAPP enforcement in the history of this important field of law, and even then rests in pertinent part on fact theories raised mostly for the first time on appeal. *See, Jones v. Beckman*, 2007 Cal. App. LEXIS 8326 (Cal. App., 2007) (rejecting Anti-Slapp cross appeal).

WHEREFORE, PREMISES CONSIDERED, Appellant prays that the Court grant relief in all things, for such other relief both in law and in equity as he may be justly entitled.

Dated: March 23, 2014

Respectfully Submitted,

Rowland J. Martin
951 Lombrano
San Antonio, Tx 78207
(210) 323-3849

24

## CERTIFICATE OF SERVICE

İ mailed a copy of this "Appellant's Reply Brief" to Glenn Deadman and Torralba Properties, LLC on March 23, 2015.

_____
Rowland J. Martin

## CERTIFICATE OF WORD COUNT

In compliance with TEX. R. APP. P. 9.4, relying on the word count function in the word processing software used to produce this document, I certify that the number of words in this document including footnotes is 8,489.

_____
Rowland J. Martin

# APPENDIX

A.    Order of the U.S. District Court For The Western District Of Texas dated March 5, 2014

B.    General Denial Of Cross Defendants Edward Bravenec And The Law Office of McKnight and Bravenec

C.    Motion To Dismiss Pursuant To The Texas Citizen's Participation Act Of Rowland J. Martin



IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

ROWLAND J. MARTIN, JR., §
§
    Plaintiff, §
§
v. §    No. SA-11-CA-414
§
EDWARD BRAVENEC, ESQ., THE §
LAW OFFICE OF MCKNIGHT AND §
BRAVENEC, AND 1216 WEST AVE, §
INC., §
§
    Defendants. §

## ORDER

On January 18, 2013, Rowland Martin filed a notice of Lis Pendens affecting the real property located at 1216 West Avenue, San Antonio, Texas (the Property). The notice of Lis Pendens indicated that Martin intended to appeal the judgment entered by this Court in the above styled and numbered cause. After the Fifth Circuit affirmed this Court's judgment and Martin refused to cancel his notice of Lis Pendens, this Court entered an order cancelling the Notice. Thereafter, Martin filed a motion for rehearing *en banc* in the Fifth Circuit as well as an amended Notice of Lis Pendens. On December 4, 2013, the Fifth Circuit denied his petition for a rehearing and the Court entered an order cancelling the amended notice of Lis Pendens. That same day, Plaintiff filed a third notice of Lis Pendens, this time indicating that title to the Property was affected by a Bexar County Probate Court matter styled *In re. Estate of Johnnie Mae King*, Cause. No. 2001-PC-1263. The

-1-

notice of Lis Pendens asserts that Martin was the administrator of the Estate and that Defendant Edward Bravenec was "attorney of record." It did not, however, clarify what bearing that probate matter has on the Property at issue in the instant suit.

On February 13, 2014, Defendants filed a motion to expunge Lis Pendens and a motion for contempt. When the Plaintiff failed to respond to the motion, the Court ordered him to explain the relationship, if any, between his administration of the Estate of Johnnie Mae King and the title to the Property. Plaintiff has filed no fewer than three responses to that order. It appears from those responses that the Plaintiff, as the administrator of the estate of Johnnie Mae King, is attempting to re-open and re-litigate a probate matter against Edward Bravenec and the Law Offices of McKnight and Bravenec. The propriety of that action and the accompanying Lis Pendens is well outside of the scope of this Court's jurisdiction. If the Defendants wish to pursue their motion, they should file it in Bexar County Probate Court Number 1.

It is therefore ORDERED that the Defendants' motion for contempt and to cancel lis pendens (Doc. No. 162) be, and it is hereby, DENIED.

SIGNED AND ENTERED THIS _5th_ day of March, 2014.

HARRY LEE HUDSPETH
SENIOR UNITED STATES DISTRICT JUDGE

-2-

**B**

## CAUSE NO: 2014-CI-07644

| | | |
|---|---|---|
| **EDWARD BRAVENEC AND 1216 WEST AVE., INC.** | § § § | **IN THE DISTRICT COURT** |
| **VS.** | § § | **285TH JUDICIAL DISTRICT** |
| **ROWLAND MARTIN, JR.** | § § § | **BEXAR COUNTY, TEXAS** |
| | | |
| **ROWLAND MARTIN, JR.** | § § | |
| **VS.** | § § | **JURY TRIAL REQUESTED** |
| **EDWARD BRAVENEC, AND THE LAW OFFICE OF MCKNIGHT AND BRAVENEC** | § § § | |

## DEFENDANT'S GENERAL DENIAL

TO THE HONORABLE JUDGE OF SAID COURT:

Now comes Edward Bravenec's, Defendant, in Answer to the Plaintiff's Counterclaims and would show the Court as follows:

### GENERAL DENIAL

1. Defendant, Edward Bravenec, denies each and every allegation contained in Plaintiffs' pleadings and demands strict proof of Plaintiffs' allegations by a preponderance of the evidence.

2. Edward Bravenec, by way of further defense should be one necessary, Defendant pleads that they are the affirmative defense of Res Judicata and Statue of Limitations.

**WHEREFORE, PREMISES CONSIDERED**, Edward Bravence prays that Plaintiffs take nothing by their suit and that Edward Bravence recover from Plaintiffs his attorney's fees, costs, and such other relief, at law or in equity, to which he shows himself justly entitled.

Respectfully submitted,

GLENN J. DEADMAN, P.C.
509 S. Main Avenue
San Antonio, TX 78204
(210) 472-3900 — Telephone
(210) 472-3901 — Facsimile
gjdeadman@aol.com


/s/ Glenn J. Deadman
Glenn J. Deadman
State Bar No. 00785559

# CERTIFICATE OF SERVICE

I hereby certify that on the ___10___ day of June, 2014, I electronically filed the Defendant's General Denial with the Clerk of the Court using the CM/ECF system and I will mail via certified mail such notification of such filing to the following:

Rowland J. Martin, Jr.
951 Lombrano
San Antonio, Texas 78207
210-323-3849


/s/ Glenn J. Deadman
Glenn J. Deadman

3

C



Cause No. 2014-CI-07644

| | | |
|---|---|---|
| EDWARD L. BRAVENEC AND 1216 WEST AVE., INC.<br>  Plaintiff | ) ) ) ) | IN THE DISTRICT COURT |
| v. | ) ) | |
| ROWLAND MARTIN, JR.<br>  Defendants | ) ) ) | 285TH JUDICIAL DISTRICT |
| ROWLAND MARTIN, JR.<br>  Plaintiff | ) ) ) ) | |
| v. | ) ) | |
| EDWARD L. BRAVENEC, AND THE LAW OFFICE OF MCKNIGHT AND BRAVENEC,<br>  Defendants | ) ) ) ) | BEXAR COUNTY, TEXAS |
| In Re OLGA VASQUEZ-SILVA d/b/a ONE FOR AUTISM, INC.<br>  Impleaded Third Party | ) ) ) | JURY TRIAL REQUESTED |

## SPECIAL APPEARANCE FOR PLEAS TO JURISDICTION AND TEXAS CITIZENS PARTICIPATION ACT MOTION TO DISMISS

TO THE HONORABLE COURT:

COMES NOW ROWLAND MARTIN, JR., the appellant in a notice of interlocutory appeal filed on July 8, 2014, in this special appearance, to file his *"Special Appearance For Plea To Jurisdiction And Texas Citizens Participation Act Motion To Dismiss,"* pursuant to the Open Courts Doctrine of the Texas Constitution and the Texas Citizens Participation Act (TCPA) in Tex. Civ. Rem. & Prac. Code Sections 27.000 et seq.

## STATEMENT OF THE CASE

An injunction is a remedial writ that depends on the issuing court's equity jurisdiction. *State v. Morales*, 869 S.W. 2d 941, 947 (Tex. 1994). Notice is hereby given that an appeal

1

contesting the interlocutory rulings at the hearing on July 1, 2014 was filed in the Fourth District Court of Appeals on July 8, 2014, under Section 51.014(a)(4) and the Texas Citizens Participation Act, thus abating at least by implication a part of the Court's plenary jurisdiction for purposes of this setting. *Langston, Sweet & Freese, PLLC v. Cletus P. Ernster, III, et al*, 255 S.W. 3d 402 (Tex. App. – 9th District, 2008) (finding that trial court lacked personal jurisdiction over a litigant who moved for a special appearance). A separate Case No. 14-50093 related to federal court orders referenced by the Plaintiffs is on appeal in the U.S. Court of Appeals. Nonetheless, in obedience to the Court's outstanding orders to show cause, and subject to this special appearance, Defendant asserts a plea to the equitable jurisdiction of the Court, and moves the Court to dismiss Plaintiffs' claims tortious interference and cross motions for summary judgment pursuant to the Texas Citizens Participation Act and case law authority in *Zuniga v. Grose, Locke, & Hebdon*, 878 S.W. 2d 313, 318 (Tex. App. San Antonio 1994, writ ref'd).

## PLEA TO JURISDICTION

There are three reasons to sustain a plea to jurisdiction on equitable grounds. First, the Court's equitable jurisdiction to grant injunctive relief was arguably unsupported and flawed from the inception of the case because the Plaintiffs are collaterally estopped form asserting the cause of action they now allege. In short, Plaintiffs omitted to disclose to the Court that in past litigation they waived challenges to Defendant's lien claim that they now invoke in this case under the pretext of a lis pendens injunction. *See infra at p. 4 -5.* Bravenec himself judicially admits his lack of standing to contest lien claims in his last motion to the federal court: "Movant availed himself of federal court, and cannot assert matters he was required to raise in this suit merely by filing the same matters under an unrelated cause in a different court." *Motion For Contempt in Case SA 11-CV-0414 dated February 13, 2014 at p. 2.* Yet this is what he did.

2

DOCUMENT SCANNED AS FILED

Second, as shown on July 1, 2014, Plaintiffs' prudential standing to invoke the Court's jurisdiction is unsupported by law and evidence on the merits: (1) by their failure to produce probative evidence of a contract, (2) by their reliance on moot theories about interference and proximate causation that improperly conflate past cancellations of lis pendens notices with an adverse disposition of the underlying lien interest in the subject property, and (3) by evidence that a forfeiture of the corporate charter by the registered agent was a superseding cause for the damages they allegedly sustained from alleged failures of the purported sale to close. The impleading of the registered agent for the purported or prospective pendent lite purchaser further moots the tortious interference claim because the filing of constructive notices of lis pendens no longer has any material bearing on the failure to close that the Plaintiffs seek to redress.

Third, the Plaintiffs' false representation to the Court that Defendant violated the temporary restraining order by filing notices in Bexar County Deed Records places their fundamental lack of prudential standing beyond doubt. By causing the Court to issue a show cause order on false premisees, and then inducing the Court to misconstrue the Defendant as the issuing party of a subpoena that was in fact issued by the District Clerk on Defendant's request, Plaintiffs willfully obstructed Defendant's ability to use compulsory process to compel witness testimony to confront patently false charges about criminal contempt. The inequitable nature of the latter conduct calls the veracity and legitimacy of the case into question to the extent there is doubt about the Court's jurisdiction and discretion to grant Plaintiffs' claims for injunctive relief.

## MOTION TO DISMISS

### A. The Texas Citizens Participation Act

Separate and apart from pleas to jurisdiction, Defendant moves the Court to dismiss Plaintiffs' original petition and cross motions for summary judgment as a matter of law pursuant

3

DOCUMENT SCANNED AS FILED

to the TCPA. The TCPA was enacted to authorize summary dismissal procedures to limit lawsuits that attempt to silence criticism by individuals who speak out on a public issue or controversy, and to encourage "citizen participation" which includes "commenting on the quality of a business." House Comm. On Judiciary & Civil Jurisprudence, Bill Analysis, Tex. H.B. 2973, 82nd Leg., R.S. at p. 1 (2011). Summary dismissal of Bravenec's tortious interference claim is due because he is a candidate for elected office using this case to silence criticism about the quality of his business as a former provider of legal service to the undersigned Defendant, and because he has no preponderant evidence with which to sustain the mandatory elements of his tortious interference claim. *See e.g., American Heritage Capital, LP, v Dinal Gonzalez and Alan Gonzalez*, Cause No. DC-11-13741-C (68th Judicial District, 2012) (applying TCPA to dismiss tortious interference claim); and *Monaco Entertainment Group, LLC and David Cooper v. City of El Paso, et al*, Cause No. EP-11-CV-561-DB (W.D. Tex, 2012) (enforcing the TCPA).

**B.      Abridgment Of Defendant's Protected Right To Free Speech**

In support of his motion to dismiss, Defendant first asserts a prima facie affirmative defense of privilege, as a former client of Bravenec and as a third party legal malpractice plaintiff, to defend his interest in a third party purchase money lien that arose when the grantor of Bravenec's second lien in the subject property, Moroco Ventures, LLC, received down payment funding through the Defendant to purchase the subject property in 2003. Due to the existence of a viable affirmative defense, Bravenec's motion for criminal contempt and cross motion for summary judgment constitute an impermissible infringement on Defendant's right to free speech in violation of the Texas Citizen's Participation Act and a clear departure from case law authority in *HMC Hotel Properties II Limited Partnership v. Keystone-Texas Property Holding Corporations*, Case No. 04-10-00620-CV (Tex. App. – San Antonio, 2013) reversed on other

4

DOCUMENT SCANNED AS FILED

grounds in Case No. 12-0289, ___ S.W. 3d ___ (Tex., June 13 2014) (noting privilege and justification as affirmative defenses warranting dismissal of a suit for tortious interference with contractual relations).

Bravenec's contention that Defendant's counterclaims for legal malpractice and issues about party purchase money lien interests are barred due to res judicata and limitations factors directly support Defendant's burden of proof for dismissal under the TCPA. Regarding limitations, the Texas Supreme Court has specifically held that "when an attorney commits malpractice in the prosecution or defense of a claim that results in litigation, the statute of limitations on the malpractice claim against the attorney is tolled until all appeals on the underlying claim are exhausted." *Gulf Coast Investment Corp. v. Brown*, 821 S.W.2d 159 (Tex.1991) (equitable tolling applied in legal malpractice case.) No claim for legal malpractice was finally litigated in any prior state or federal court case. As the beneficiary of a recognized legal malpractice privilege, and as party to pending suit in a suit litigation in Cause 2010-CI-19099 that implicates the former attorney client relationship with Bravenec, Defendant is plainly authorized to assert prima facie third party purchase money lien claims against property interests and their proceeds that Bravenec acquired during the probate case as part of the consideration for his services.

Bravenec's contentions about res judicata, though more appropriately characterized as objections about issue preclusion, also support dismissal when examined in light of the guiding principles cited in *Watson v. Jones*, 80 U.S. 679, 680 (1871). There, the U.S. Supreme Court noted that when, in courts of concurrent jurisdiction, the pendency of a suit in one is relied on to defeat a second suit in the other – as Bravenec attempting to do in his criminal contempt proceeding below -- the identity of the parties, of the case made, and of the relief sought should

5

DOCUMENT SCANNED AS FILED

be such that if the first suit had been decided, it could be pleaded in bar as a former adjudication. Id at p. 680. In such cases, the proceedings in an appellate court are part of the proceedings in the first court, and orders made by it to be enforced by the court of primary jurisdiction are, while unexecuted, a part of the case in the first suit, which may be relied on as lis pendens in reference to the second suit. Id at p. 680.

*Watson* specifically notes that the nature and character of the title and possession to real property decreed by a first court may be inquired into by another court, and if it was of a fiduciary character, and the trust was not involved in the first suit, a second suit may be maintained in any court of competent jurisdiction to declare, define, and protect the trust, though the first suit may be still pending. Id at p. 681. *Watson* means Appellant retained a privilege from a former relationship of trust, and this Court has TCPA jurisdiction to enforce it. *Id.*

## C.     Collateral Estoppel Issues

Bravenec is subject to collateral estopped from prosecuting tortious interference claims. That Bravenec is acting in bad faith is evident from his failure to object in U.S. District Court Case No. SA 11-CV-0414 on March 5, 2014 to the purchase money lien claims that he now attempts to restrain with fictitious charges about criminal contempt,[1] from his allegation on or

---

[1]      Plaintiffs' previously argued in federal court that "[a] litigant who files a petition in court must include all causes of action that relate to the incident or circumstances, or those claims are waived. *Commissioner v. Sunner*, 333 U.S. 591, 597 (1998). The prior judgment acts as res judicata, precluding the parties from re-litigating issues that were or could have been raised in that action. *Allen v. McCurry*, 449 U.S. 90, 94, 101 Sect. 411, 66 L.Ed.2d 308 (1980). As all matters relating to the pendency of the action involving real property were voluntarily submitted to this court by Plaintiff. Plaintiff is subject to this court's orders, and this court has the sole jurisdiction, for all orders relating to any lis pendens against 1216 West Ave. arising from the dispute that occurred from the alleged unlawful foreclosure." Document 162 in Case SA 11-CV-0414. The Order of March 5, 2014 rejected the Plaintiff's line of argument about exclusive jurisdiction out of hand: "The propriety of ... the ..Lis Pendens [dated December 3, 2013] is well outside the scope of this Court's jurisdiction." Order of the U.S. District Court for the Western District Of Texas, dated March 5, 2014. At the hearing on March 19, 2014, the Bexar County Probate Court #1 made findings on an attorney withdrawal issue and a lis pendens notice issue, both of which implicated Plaintiff's interest in the property as a purchase money creditor and malpractice claimant. That court issued a ruling at Plaintiff's request to judicially notice Defendant Bravenec's previously unnoticed

6

DOCUMENT SCANNED AS FILED

about June 13, 2014 that Appellant had filed notices of lis pendens in the Bexar County Deed Records, and from pleadings falsely asserting that Defendant represented himself an attorney by issuing a subpoena in violation of TRCP 176.4.

*Zuniga* explains the public policy rationale for a zero tolerance approach to role-reversing attorney conduct that increases and distorts litigation to the detriment of the judicial process:

> For the law to countenance [an] abrupt and shameless shift of positions would give prominence (and substance) to the image that lawyers will take any position, depending upon where the money lies, and that litigation is a mere game and not a search for truth ... It is one thing for lawyers in our adversary system to represent clients with whom they personally disagree; it is something quite different for lawyers ... to switch positions ... simply because an assignment [has] given them a financial interest in switching.

*Zuniga, Id.* Here, Bravenec's unconscionable request for a finding of criminal contempt represents the third time in less than a year that he has falsely attempted to incarcerate the Defendant for speech in a judicial forum. The Court is respectfully requested to redress this fact by dismissing his claim for tortious interference and his cross motion for summary judgment, to set a date for a jury trial on Defendant's counterclaims, and finally, to impose a constructive trust to subrogate Defendant as the payee of the purported contract of sale, if any, and by subordinating Bravenec to his net income from rental proceeds he has already collected.

WHEREFORE, PREMISES CONSIDERED, Defendant prays that the Court grant relief in all things, and for such other relief both in law and in equity as he may be justly entitled.

Dated: July 9, 2014

Respectfully Submitted,

Rowland J. Martin
951 Lombrano
San Antonio, Tx 78207
(210) 323-3849

---

withdrawal from the probate case, and it granted lis pendens relief to Defendant Bravenec by way of a finding only that the Estate was not a fee simple owner of the subject property. Defendants failure to request reconsideration of the omission of limitations and res judicata accommodations in the respective federal court and probate court orders effectively estops them from raising those arguments now.

7

DOCUMENT SCANNED AS FILED

## CERTIFICATE OF SERVICE

I certify that a copy of this *"Special Appearance For Plea To Jurisdiction And Texas Citizens Participation Act Motion To Dismiss,"* will be hand delivered to Glenn Deadman on July 9, 2014.

_____
Rowland J. Martin, Jr.

8

DOCUMENT SCANNED AS FILED