

NUMBER 13-12-00352-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

SAN JACINTO TITLE SERVICES
OF CORPUS CHRISTI, LLC., SAN
JACINTOTITLE SERVICES OF TEXAS,
LLC., ANDMARK SCOTT,                                    Appellants,

v.

KINGSLEY PROPERTIES, LP.,                                    Appellee.

**On appeal from the County Court at Law No. 2
of Nueces County, Texas.**

# OPINION

**Before Chief Justice Valdez and Justices Benavides and Longoria
Opinion by Justice Longoria**

Appellants, San Jacinto Title Services of Texas ("SJT"), San Jacinto Title

Services of Corpus Christi ("SJCC") (collectively, "San Jacinto"), and Mark Scott, filed

an interlocutory appeal of the trial court's order denying their motion to dismiss under

the Texas Citizens Participation Act ("TCPA"), the Texas anti-SLAPP statute.[1] *See* Act of May 18, 2011, 82nd Leg. R.S., ch. 341, § 2, 2011 Tex. Sess. Law Serv. 341 (West) (codified at TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001–.011 (West Supp. 2011)).[2] For the reasons stated below, we agree with appellants that we have jurisdiction over this appeal, but we conclude that the TCPA does not apply to the lawsuit appellee, Kingsley Properties, filed against appellants. Accordingly, we affirm the trial court's denial of appellants' motion to dismiss.

## I. BACKGROUND

Appellee owns land ("the Property") in Corpus Christi, Texas on which a golf course and country club facilities are located. San Jacinto acted as Kingsley's escrow agent during appellee's purchase of the Property in 2005. Scott, who serves as Vice President of San Jacinto, was apparently briefly present at the closing but not involved in the actual proceedings. In 2009, Jim Robichaux, a homeowner in the King's Crossing Subdivision adjacent to the Property, sent an open letter to the Corpus Christi City Council asserting that appellee intended to close the golf course and club, re-plat the Property and develop it commercially.[3] Robichaux asserted that appellee's alleged plans would substantially decrease the value of his home, stated his strong opposition

---

[1] A SLAPP suit can be defined as a lawsuit that is "without substantial merit that stop[s] citizens from exercising their political rights or to punish them for having done so." GEORGE W. PRING & PENELOPE CANAN, *"Strategic Lawsuits Against Public Participation" ("SLAPPS"): An Introduction for Bench, Bar and Bystanders*, 12 BRIDGEPORT L. REV. 937, 942 (1992) (internal quotations omitted); *see generally* SHANNON HARTZLER, Note, *Protecting Informed Public Participation: Anti-SLAAP Law and the Media Defendant*, 41 VAL. U. L. REV. 1235 (collecting and analyzing state anti-SLAAP laws). As discussed below, we take no position on whether the underlying lawsuit in this case constitutes a SLAPP suit.

[2] All statutory references in opinion are to Chapter 27 of the Texas Civil Practice and Remedies Code unless otherwise noted.

[3] Robichaux's statements apparently arose from pleadings that appellee filed in a separate, unrelated lawsuit where Robichaux stated that appellee asserted that it had the right to develop the Property without restriction. Appellee's pleadings in that lawsuit, if any, are not part of the record in this appeal.

to appellee's plans, and asked to know the Council's opinion on the matter. Scott, who was a (ultimately successful) candidate for the city council at the time, responded with what the parties refer to as the "Hobbs Letter," a mass mailing to all the residents of the subdivision. In the Hobbs Letter, which was sent on Scott's campaign stationary, Scott stated his opposition to the plan and invited people to contact him regarding that issue or any other. Scott provided his contact information, including his office phone number at San Jacinto.

In February 2010, appellee filed suit for business disparagement, breach of fiduciary duty, and tortuous interference with prospective relations against Scott and San Jacinto, and for breach of contract against San Jacinto alone.[4] Appellee further alleges that Scott acted in the course and scope of his employment with San Jacinto when he sent the Hobbs Letter and that San Jacinto is therefore vicariously liable for Scott's actions. All of appellee's claims arise from the Hobbs Letter, and the effect it allegedly had on appellee's negotiations with Philip Hurst, a Corpus Christi businessman who had been negotiating with appellee to purchase the Property at the time. Hurst testified in an affidavit that after seeing the Hobbs Letter, he was no longer willing to pay appellee's asking price of $5,000,000. Negotiations between appellee and Hurst eventually broke down completely.

Appellants filed a motion to dismiss under the TCPA, which requires a trial court to dismiss a lawsuit that "is based on, relates to, or is in response to" the defendant's exercise of any of their constitutional rights of free speech, petition, or association. *Id.* § 27.005(b). The moving party must prove by a preponderance of the evidence that

---

[4] Appellee filed three amended petitions that added and non-suited various claims. We take this list of claims from appellee's Third Amended Petition, its live petition.

3

they are being sued on this basis. *Id.* The party bringing the action can prevent dismissal by showing that they have established "by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c). Once a defendant brings a motion to dismiss under this chapter, all discovery in the lawsuit is suspended. *Id.* § 27.003(c).

In this case, without specifically ruling that the TCPA applied, the trial court denied appellants' motion. Appellants filed a request for findings of fact pursuant to section 27.007(a). The trial court issued findings of fact that appellee's lawsuit was not brought to "deter or prevent" either defendant from exercising their constitutional rights, or for an improper purpose. Appellants subsequently perfected this interlocutory appeal challenging the trial court's denial of their motion to dismiss.

## II. DISCUSSION

### A. Jurisdiction

As a threshold matter, appellee argues that we do not have jurisdiction over this appeal because section 27.005 does not create an interlocutory appeal when the trial court denies a motion to dismiss by written order. For the reasons stated below, we conclude that we do possess jurisdiction over this appeal.

### 1. Standard of Review

Statutory construction is a question of law that we review de novo. *Railroad Comm'n of Tex. v. Tex. Citizens for a Safe Future and Clean Water*, 336 S.W.3d 619, 624 (Tex. 2011). Our primary object in construing a statute is to give effect to the legislature's intent. *Id.* at 628; *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010). "We rely on the plain meaning of the text as expressing legislative intent unless a different meaning is supplied by legislative

4

definition or is apparent from the context, or the plain meaning leads to absurd results." *Tex. Lottery Comm'n*, 325 S.W.3d at 635; *see City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003). The Texas Supreme Court instructs appellate courts to read a statute as a whole and give effect to every part. *Tex. Citizens*, 336 S.W.3d at 628; *City of San Antonio*, 111 S.W.3d at 25. In interpreting a statute, we "consider the objective the legislature sought to achieve through the statute as well as the consequences of a particular construction." *HCBeck, Ltd. v. Rice*, 284 S.W.3d 349, 352 (Tex. 2009).

### 2. Applicable Law

Appellate courts possess jurisdiction only over final judgments unless a statute authorizes an interlocutory appeal. *CMH Homes v. Perez*, 340 S.W.3d 444, 447–48 (Tex. 2011). "Jurisdiction over an interlocutory order when not expressly authorized . . . by statute is jurisdictional fundamental error." *N.Y. Underwriters Ins. Co. v. Sanchez*, 799 S.W.2d 677, 679 (Tex. 1990). We normally strictly construe statutes that grant interlocutory appeals, *CMH Homes*, 340 S.W.3d at 447, but the legislature instructed us in this case to liberally construe the TCPA in order to "effectuate its purpose and intent fully." TEX. CIV. PRAC. & REM. CODE § 27.011(b).

### 3. Section 27.008 of the TCPA

Section 27.008 of the TCPA is titled "Appeal," and contains the TCPA's only language regarding appeals. It reads in whole:

> (a) If a court does not rule on a motion to dismiss under Section 27.003 in the time prescribed by Section 27.005, the motion is considered to have been denied by operation of law and the moving party may appeal.
>
> (b) An appellate court shall expedite an appeal or other writ, whether interlocutory or not, from a trial court order on a motion to

5

dismiss a legal action under Section 27.003 or from a trial court's failure to rule on that motion in the time prescribed by Section 27.005.

(c) An appeal or other writ under this section must be filed on or before the 60th day after the date the trial court's order is signed or the time prescribed by Section 27.005 expires, as applicable.

§ 27.008.

**4. Analysis**

Appellee argues that we lack jurisdiction because the plain language of section 27.008(a) only creates an interlocutory appeal when the trial court constructively denies a motion to dismiss after sixty days, and the plain language of subsections (b) and (c) do not expressly create an interlocutory appeal when the trial court denies the motion by written order.

Only two other courts of appeals have considered jurisdiction of an appeal under Chapter 27 in these circumstances, and they have come to divergent conclusions. In *Jennings v. Wallbuilder Presentations, Inc.*, 378 S.W.3d 519, 524–29 (Tex. App.—Fort Worth 2012, pet. filed), the court of appeals concluded that it did not possess jurisdiction for the same reasons argued by appellee in this case. *See also Lipsky v. Range Prod. Co.*, No. 02-12-0098-CV, 2012 WL 3600014, at *1 (Tex. App.—Fort Worth Aug. 23, 2012, pet. filed) (mem. op.). The Fourteenth Court of Appeals, in contrast, recently issued an opinion in support of an order that denied a motion to dismiss an appeal on these same jurisdictional grounds for reasons we will discuss below. *Direct Commercial Funding, Inc., v. Beacon Hill Estates, LLC*, No. 14-12-896-CV, 2013 WL 407029, at *3– 4 (Tex. App.—Houston [14th Dist.] Jan. 24, 2013, order).

Appellee argues, as the *Jennings* court reasoned, that the legislature uses specific language to create an interlocutory appeal. *See, e.g.,* TEX. CIV. PRAC. & REM.

6

CODE ANN. § 51.014(a)(1) (West Supp. 2011) (providing that "a person may appeal from an interlocutory order of a . . . court" and listing a series of appealable interlocutory orders.); *id.* § 150.002(f) (West 2011) ("An order granting or denying a motion for dismissal [based on this section] is immediately appealable as an interlocutory order."); *id.* § 15.003(b) (West Supp. 2011) ("[A]n interlocutory appeal may be taken of a trial court's determination . . . ."). Section 27.008(a) contains similar language that creates an appeal when the trial court does not timely rule on the motion, but the legislature does not use the same language in subsections (b) or (c). Appellee reads subsection (b) as ordering appellate courts to expedite appeals brought under section 27.008 and subsection (c) as providing the time frame to file an appeal.

Appellee argues that interpreting section 27.008 in this way does not reach an absurd result and is actually consistent with the logic of the TCPA. Appellee argues that the purpose of the TCPA is to provide a defendant who claims he is being sued for exercising his constitutional rights "one opportunity to have the issue heard and actually decided." Appellee interprets subsection (a) as furthering that purpose by providing that appellate courts will consider and rule on a defendant's claims if the trial court fails to do so within the time periods laid out by the TCPA.

We decline to adopt appellee's interpretation of section 27.008 because to do so would render portions of section 27.008(b) and (c) meaningless. *Tex. Citizens*, 336 S.W.3d at 628; *see also Fresh Coat, Inc. v. K-2, Inc.*, 318 S.W.3d 893, 901 (Tex. 2010) (observing that courts "avoid treating statutory language as surplusage where possible"). Subsection (b) provides that "[a]n appellate court shall expedite an appeal or other writ, whether interlocutory or not, *from a trial court order* on a motion to dismiss a

7

legal action under Section 27.003 *or from a trial court's failure to rule* on that motion in the time prescribed by Section 27.005." TEX. CIV. PRAC. & REM. CODE § 27.008(b) (emphasis added). The plain language of subsection (b) indicates that the legislature contemplated two situations: (1) an appeal from a trial court's *order* on a motion to dismiss brought under chapter 27 and (2) an appeal from the trial court's *failure* to issue an order on the motion to dismiss. Additionally, subsection (c) provides that an appeal or other writ must be filed with the court of appeals sixty days "after the trial court's order is signed" or the time for the court to rule expires. To give section 27.008 the construction appellee requests would render the language in subsections (b) and (c) meaningless. Our opinion comports with the holding of the Fourteenth Court of Appeals that "if no signed order can be the subject of an interlocutory appeal," then the language in subsections (b) and (c) is superfluous. *Direct Commercial Funding*, 2013 WL 407029, at *3–4.

We are mindful that courts "are not responsible for omissions in legislation" and that even if it appears that the legislature did not accomplish something in a statute that we think it intended, "courts are not empowered to 'fix' the mistake by disregarding direct and clear statutory language that does not create an absurdity." *Tex. Lottery Comm'n*, 325 S.W.3d at 638. However, after reading the statute as a whole in light of the legislature's stated purpose for enacting it, we conclude that adopting appellee's proposed interpretation of section 27.008 leads to an absurd result. The legislature's stated purpose in enacting the TCPA was to "encourage and safeguard" the exercise of First Amendment rights by Texans "to the maximum extent permitted by law" while also protecting the rights of persons to file lawsuits for "demonstrable injury." § 27.002. It is

8

evident that the legislature intended to effectuate the purpose of the TCPA by ensuring that courts will dismiss SLAAP suits quickly and without the need for prolonged and costly proceedings.[5] The legislature chose to title section 27.008 "appeal," indicating that they intended to provide for quick appellate review on trial court rulings on motions to dismiss brought under this chapter. Under appellee's reading of section 27.008, whether a defendant receives appellate relief under the TCPA does not depend on whether they suffered the harm the TCPA was designed to prevent, but on the trial court's attentiveness to the motion to dismiss. A defendant whose motion was denied by written order would have no choice but to go to trial and receive a judgment before raising a First Amendment defense on appeal, but a second defendant sued under identical circumstances could immediately take an interlocutory appeal if the trial court failed to timely rule on his motion. The first defendant would effectively have no remedy under the TCPA even if the suit against him was the quintessential SLAPP suit. Appellee's interpretation creates an absurdity by drawing an artificial distinction within the class of defendants the TCPA was designed to protect regardless of whether they suffered the harm for which the legislature addressed by enacting the TCPA. We see nothing in the statute or its history that indicates the legislature intended to actually draw this distinction when granting appellate rights in section 27.008.[6]

---

[5] Almost all motions to dismiss under this chapter will be heard by the trial court within 120 days of the date the defendant is first served with the lawsuit. *See Jennings*, 378 S.W.3d at 526 n.6.

[6] Additionally, we presume that the legislature enacted a statute "with complete knowledge of the existing law and with reference to it." *Acker v. Tex. Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990). In Texas law, an "appeal" refers to "a review by a superior court of an inferior court's decision." *Bigby v. State*, 892 S.W.2d 864, 871 (Tex. Crim. App. 1994); *see also Waters-Pierce Oil Co. v. State*, 106 S.W. 326, 331 (Tex. 1907) ("appellate jurisdiction . . . is defined to be the power and authority conferred upon a superior court to rehear and determine causes which have been tried in inferior courts"). The procedure appellee discerns in section 27.008 is not an "appeal" in the sense that it is used in Texas law, but is essentially a grant of original jurisdiction to the courts of appeals to rule on a Chapter 27 motion to

9

Normally, statutes conferring interlocutory appeals are strictly construed, *CMH Homes*, 304 S.W.3d at 447, but the legislature expressly instructed us to liberally construe the TCPA in order to "effectuate its purpose and intent fully." § 27.011(b).[7] We conclude that our construction furthers the legislature's intent in enacting the statute by allowing for quick review of all timely motions to dismiss under this chapter that are denied by the trial court. Interpreting section 27.008 in this way also gives full effect to the language the legislature employed in 27.008(b) and (c). *See Direct Commercial Funding*, 2013 WL 407029, at *3–4. In sum, we conclude that section 27.008 permits an interlocutory appeal when the trial court denies the defendant's motion by written order.

## B. Application of the Statute

Appellee argues that even if we have jurisdiction over this appeal, the statute does not apply to appellee's suit because appellee filed before the statute's effective date. Appellee filed suit in February 2010 and the TCPA went into effect on June 17, 2011. Act of May 18, 2011, 82nd Leg. R.S., ch. 341, § 3, 2011 Tex. Sess. Law Serv. 341 (West). Appellants argue that the TCPA applies to this suit because the Act broadly defines the "legal actions" subject to dismissal under the TCPA as "more than just [a] lawsuit." Therefore, appellant argues that the TCPA applied from the date of appellee's first amended petition, which added a cause of action for business disparagement. Alternatively, San Jacinto of Texas ("SJT") argues alone that the TCPA

---

dismiss if the trial court did not make a timely motion. Although the legislature may confer original jurisdiction on the courts of appeals by statute, the fact remains that they chose to enact an "appeal" section of the TCPA, and we see no evidence in the statute that they intended for that word to bear a different meaning than it normally bears in Texas law.

[7] The *Jennings* court did not address the legislature's direction to liberally construe the TCPA.

10

applies to the suit against it because it was not added as a party until after the TCPA's effective date.

### 1. Applicable Law

In applying a new statute, we begin with the presumption that it is applies prospectively unless it is expressly made retroactive. *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 219 (Tex. 2002); TEX. GOV'T CODE ANN. § 311.022 (West 2005). As always, our primary goal in interpreting statutory language is to give effect to the legislature's intent. *Tex. Citizens*, 336 S.W.3d at 624; *Tex. Lottery Comm'n,* 325 S.W.3d at 635.

### 2. Analysis

The TCPA defines a "legal action" as a "lawsuit, cause of action, petition, complaint, cross-claim or counterclaim or any other judicial pleading or filing that requests legal or equitable relief." § 27.001(6). Appellants argue that this expansive definition refers to "more than just [a] lawsuit," so that the TCPA applies whenever a pleading in any case makes a claim that could be construed as a SLAPP claim, even if the plaintiff commenced the lawsuit before the effective date of the TCPA. However, appellant does not address language the legislature enacted as section 3 of the TCPA:

> "[t]he change in law made by this Act applies only to a legal action filed on or after the effective date of this Act. A legal action filed before the effective date of this Act is governed by the law immediately before that date, and that law is continued in effect for that purpose."

Act of May 18, 2011, 82nd Leg. R.S., ch. 341, § 3, 2011 Tex. Sess. Law. Serv 341 (West).

The legislature has made it quite clear with this language that the TCPA applies only to a "legal action," of any sort, that is filed after the TCPA's effective date. *See In*

11

*re Omni Hotels Mgmt. Corp.*, 159 S.W.3d 627, 629 n.4 (Tex. 2005) (noting that almost identical language in an amendment to the probate code meant that it did not apply to a case filed before the amendment's effective date); *Tex. Dept. of Protective and Regulatory Serv. v. Sherry*, 46 S.W.3d 857, 860 n.1 (Tex. 2001) (same, for an amendment to the family code). Far from overcoming the presumption that a new statute applies prospectively, we interpret this language as legislative confirmation of that presumption for the TCPA. *See City of Rockwall v. Hughes*, 246 S.W.3d 621, 626 (Tex. 2008) ("When a statute's language is clear and unambiguous, it is inappropriate to resort to the rules of construction or extrinsic aids to construe the language.").

SJT argues that its motion was timely because SJT was not sued until after the TCPA became effective. SJT reasons that SJCC had become a "nonexistent entity" at the time appellee filed suit, so appellee did not actually commence a "legal action" against SJT within the meaning of the TCPA until the First Amended Petition, which was filed after the effective date. However, Texas law provides that when one corporation merges into another, it no longer has a separate existence from the surviving entity. TEX. BUS. ORG. CODE ANN. § 10.008(a)(1) (West Supp. 2011). When SJCC appeared by filing an answer and responding to appellee's requests for discovery, it did not exist as an entity separate from SJT, and this suit was pending against SJT at the time. Lawyers for SJT and Mark Scott eventually informed appellee of the merger in their responses to discovery, and appellee accordingly amended its petition to name SJT as the successor in interest to SJCC. Because suit was pending against SJT from the time of appellee's Original Petition, we conclude that the TCPA is inapplicable to appellee's

12

legal action against SJT for the same reasons that we discussed above: appellee filed suit before the TCPA's effective date

In sum, we conclude that the TCPA does not apply to appellee's suit against any of the named appellants. We overrule appellants' remaining issues on appeal, all of which related to the TCPA.

### III. CONCLUSION

We affirm the trial court's denial of appellants' motion to dismiss.

_____
NORA L. LONGORIA
Justice

Delivered and filed the
25th day of April, 2013.

13