

# NUMBER 13-13-00409-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

YSLETA INDEPENDENT SCHOOL
DISTRICT AND COMMISSIONER OF
EDUCATION,                                                            **Appellants,**

**v.**

EDITH PORTER, JENNIFER ADAMS, AND
RITA VASQUEZ,                                                         **Appellees.**

**On appeal from the 261st District Court
of Travis County, Texas.**

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Benavides
Memorandum Opinion by Chief Justice Valdez**

Appellants, the Ysleta Independent School District ("Yselta") and the

Commissioner of Education (the "Commissioner"), appeal the trial court's judgment

reversing the Commissioner's decision that Yselta's requirements for teacher's lesson

plans do not violate section 11.164 of the Texas Education Code.  *See* TEX. EDUC. CODE

ANN. § 11.164 (West, Westlaw through 2013 3d C.S.). By four issues, Yselta and the Commissioner contend that the trial court misinterpreted section 11.164 of the education code and that the trial court erred in concluding that Yselta's requirements that the lesson plans include the assessments, the differentiated activities/modifications for special populations, and the cognitive level violates section 11.164.[1] *See id.* By three cross-issues, appellees, Edith Porter, Jennifer Adams, and Rita Vasquez (the "Teachers"), contend that Yselta cannot require teachers to write lesson plans within the template provided and that the trial court should have reversed the Commissioner's decision that Yselta did not violate section 11.164 by requiring that the lesson plans include The Texas Essential Knowledge and Skills objectives ("TEKS"), and The Texas Assessment of Knowledge and Skills objectives ("TAKS"). *See id.* We affirm.[2]

## I.    BACKGROUND

The Teachers are employed at E.M. Hanks High School (Hanks) in the Ysleta Independent School District. After Yselta received an "adequate" yearly progress report, pursuant to the federal No Child Left Behind Act, which indicated that Hanks was a school in need of improvement, Yselta implemented new requirements for teacher lesson plans.[3] The new plan required teachers to complete a weekly lesson plan listing to include, among other things, the following: (1) the TEKS objectives that would be covered; (2) the

---

[1] We have reorganized and renumbered all of the parties' issues for purposes of our analysis.

[2] Pursuant to a docket-equalization order issued by the Supreme Court of Texas, the appeal has been transferred to this Court from the Third Court of Appeals in Austin, Texas. *See* TEX. GOV'T. CODE ANN. § 73.001 (West, Westlaw through 2013 3d C.S.).

[3] *See* 20 U.S.C. §§ 6301–7916 (2002) (West, Westlaw through P.L. 113–296) ("The purpose of this subchapter is to ensure that all children have a fair, equal, and significant opportunity to obtain a high-quality education and reach, at a minimum, proficiency on challenging State academic achievement standards and state academic assessments.").

TAKS objectives; (3) the lesson objectives; (4) the lesson activities and strategies; (5) the assessment and cognitive level; (6) differentiated activities and/or modifications for special populations; and (7) homework.

The Teachers filed a level-one grievance arguing that the lesson plan requirements violated section 11.164. *See id.* The principal of Hanks, Eileen Wade, Ed.D., denied the Teachers level-one grievance. The Teachers then filed a level-two grievance. After a hearing, Yselta's director of employee relations, Dr. Jodi L. Duran, determined that all of the lesson plan requirements were allowed by the statute; however, she modified the lesson plan requirements so that teachers only needed to provide the TEKS objectives' corresponding numbers. Yselta's school board considered the Teachers' level-three grievance, and the board voted to uphold Dr. Duran's decision.

The Teachers then appealed the board's decision to the Commissioner, and the Commissioner held a hearing. The Commissioner issued an opinion that included findings of fact and conclusions of law wherein the Commissioner found that the lesson plan, as modified, did not violate section 11.164 of the statute. *See id.* Section 11.164 states, in relevant part, the following: "The board of trustees of each school district shall limit redundant requests for information and the number and length of written reports that a classroom teacher is required to prepare" and "[a] classroom teacher may not be required to prepare any written information other than" among other things, "a unit or weekly lesson plan that outlines, in a brief and general manner, the information to be presented during each period at the secondary level or in each subject or topic at the elementary level." *Id.* Regarding its analysis of section 11.164, the Commissioner noted the following:

3

The caption of Texas Education Code section 11.164 is "Restricting Written Information." While the goal is to limit "the number and length of written reports," a number of reports such as lesson plans are allowed. The particular portion of the statute currently at issue was not in original in statute [sic.]. As originally passed, Texas Education Code section 11.164 required districts to consider the number and length of reports. . . . Six years later, Texas Education Code section 11.164 assumed its current form. The old law required school districts to review their paperwork procedures. The remedy was to only allow certain paperwork. What the evil was can be seem [sic.] by examining the legislative history.

The relevant provisions of Texas Education Code section 11.164 were originally filed as SB 13 [(Senate Bill 13)]. This bill passed the Senate but was never taken up by the House. Senator Zaffirini, the author of SB 13, amended HB 3459 to include the language from SB 13 in a parliamentary maneuver that gave the House more time to consider the change. Senate Video, May 27, 2003, 6:15:25. There was very little discussion of the amendment. Senator Zaffirini did little more than explain that the amendment was identical to SB 13 and that the amendment would give the House additional time to take action.

The Commissioner's opinion explained that the relevant statutory analysis was whether the lesson plan required more than a brief outline of the information to be presented for each period. The decision partly relied on the amount of time it took teachers to complete the lesson plan. The Commissioner rejected the Teachers' claim that Yselta violated section 11.164(a)(6) because it required "more than an outline of the information to be presented." The Commissioner concluded that "[Yselta's] requirement that teachers include TEKS, TAKS objectives/lesson objectives, strategies, modifications, [and/or] differentiated activities; and cognitive levels does not require a lesson plan to include more than a description of the information to be presented." The Commissioner denied the Teachers' motion for rehearing.

The Teachers petitioned the trial court for review of the Commissioner's decision. Without a hearing, the trial court issued a judgment stating, "Because there is no substantial evidence that the (1) Assessments, (2) The Differentiated Activities and/or

4

Modifications foe [sic] Special Populations, (3) The Cognitive Level will be taught to students, the Commissioner's Decision is REVERSED as to these three sections only." The trial court affirmed the remainder of the Commissioner's decision. This appeal and cross-appeal followed.

## II. INTERPRETATION OF SECTION 11.164(A)(6)

By their first issue, Yselta and the Commissioner each contend that the trial court erred in concluding that section 11.164(a)(6)'s phrase "information presented during each period at the secondary level" refers to information that is taught to the students.[4] Specifically, Yselta and the Commissioner argue that the trial court applied the wrong standard when it reviewed the Commissioner's decision and that the trial court should have reviewed the Commissioner's decision by determining whether substantial evidence supported it.

### A. Standard of Review

The proper standard of reviewing the meaning of a statute is de novo. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). The primary purpose when construing a statute is to give effect to the Legislature's intent by relying on the plain meaning of the text unless a different meaning has been supplied by the Legislature or enforcing the plain meaning would result in absurdity. *Id.* If the statute is ambiguous, we will uphold the agency's construction if its interpretation is reasonable and in accord with the statute's plain language. *R.R. Comm'n v. Tex. Citizens for a Safe Future & Clean Water*, 336

---

[4] Yselta and the Commissioner argue that the information required in Yselta's lesson plan format is information that is related to what will be taught to the students and that the statute allows school districts to require that lesson plans include what is taught in addition to information that is related to what is taught in the classroom.

S.W.3d 619, 625 (Tex. 2011). However, if the Legislature's "intent is clear and unambiguous under the language of the statute, that is the end of the [statutory construction] inquiry." *Id.* at 628 ("If the statute is clear and unambiguous, we must apply its words according to their common meaning.") (citing *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984)). "And ordinarily, when divining legislative intent, 'the truest manifestation' of what lawmakers intended is what they enacted, 'the literal text they voted on.'" *First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 631–32 (Tex. 2008) (quoting *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 651 (Tex. 2006)).

## B.  Analysis

The title of section 11.164 is "Restricting Written Information."[5]  TEX. EDUC. CODE ANN. § 11.164. It states, "The board of trustees of each school district shall limit redundant requests for information and the number and length of written reports that a classroom teacher is required to prepare." *Id.* "A classroom teacher may not be required to prepare any written information" except as provided by section 11.064(a)(1–10), which lists the written information a school district may require.[6] *Id.* Thus, by enacting section 11.164,

---

[5] Yselta argues that in construing a statute, a court is not allowed to consider the title. However, we reject this argument because the legal authority on the matter does not support it. *See* TEX. GOV'T CODE ANN. § 311.023 (West, Westlaw through 2013 3d C.S.) (setting out that when construing a statute, whether ambiguous or not, the court may consider the following: (1) object sought to be attained; (2) circumstances under which the statute was enacted; (3) legislative history; (4) common law or former statutory provisions, including laws on the same or similar subjects; (5) consequences of a particular construction; (6) administrative construction of the statute; and (7) title (caption), preamble, and emergency provision); *Ex parte S.C.*, 305 S.W.3d 258, 262 (Tex. App.—Houston [14th Dist.] 2009, no pet.) ("[When construing a statute, w]e may also consider, among other matters, the objective the legislature sought to attain, circumstances under which the statute was enacted, legislative history, common law, consequences of a particular construction, and the title of the statute.").

[6] Specifically, section 11.164(a) allows school districts to require teachers to prepare the following written reports: (1) "any report concerning the health, safety, or welfare of a student"; (2) "a report of a student's grade on an assignment or examination"; (3) "a report of a student's academic progress in a class or course"; (4) "a report of a student's grades at the end of each grade reporting period"; (5) "a report on

the Legislature has limited the number and length of written reports a school district can require a teacher to prepare, including lesson plans, which are limited as described by section 11.164(a)(6). *See id.* Based on a plain reading of section 11.164, the statute places a restriction on the amount of paperwork and the length of written reports that a school district may require a teacher to produce. *See id.* Thus, the purpose of the statute is to ensure that a school district does not request numerous and lengthy written reports from teachers and to limit a school district's requirements of teachers to only produce in writing what is listed in the statute. *See id.*

Regarding lesson plans, section 11.164(a)(6) states that "A classroom teacher may not be required to prepare any written information" except for a lesson plan that outlines in a brief and general manner the information to be presented in class. *Id.* The question becomes what information the Legislature allows a school district to require in a lesson plan.[7]

Yselta and the Commissioner imply that possibly anything the administration requires to be read or given in writing to the students must be included in the lesson plan because it is information presented in the classroom. For example, both Yselta and the Commissioner point out that Principal Wade testified that the TEKS and TAKS objectives are presented to the students because the teachers are required to post those objectives

---

instructional materials"; (6) "a unit or weekly lesson plan that outlines, in a brief and general manner, the information to be presented during each period at the secondary level or in each subject or topic at the elementary level"; (7) "an attendance report"; (8) "any report required for accreditation review"; (9) "any information required by a school district that relates to a complaint, grievance, or actual or potential litigation and that requires the classroom teacher's involvement"; and (10) "any information specifically required by law, rule, or regulation." TEX. EDUC. CODE ANN. § 11.164 (West, Westlaw through 2013 3d C.S.). Neither Yselta nor the Commissioner have argued that Yselta's lesson plan requirements are allowed pursuant to any other sub-sections of 11.164(a). *See id.*

[7] The trial court determined that the phrase "information to be presented" refers to information that is taught to the students.

on the board for the students to read.[8]  Yselta and the Commissioner urge this Court to read the phrase, "information presented during each period at the secondary level," in isolation from the other parts of the sentence and to conclude that anything provided to the students is information presented if it relates in any way to the lesson being taught. However, in construing a statute, we do not read certain phrases and words in isolation. *In re Ford Motor Co.*, 442 S.W.3d 265, 280 (Tex. 2014) (orig. proceeding) ("In determining a statute's meaning, we 'consider statutes as a whole rather than their isolated provisions.'") (quoting *TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011)).  Instead, we read the phrase within the context of the entire statute*.  Id.* Therefore, we will consider the statute as a whole.  *See id.*

As previously mentioned above, section 11.164(a)(6) states, in relevant part, that "A classroom teacher may not be required to prepare any written information" except for a lesson plan.[9]  TEX. EDUC. CODE ANN. § 11.164.  Therefore, for purposes of our analysis we will focus on the Legislatures' use of the term "lesson plan" to describe what a school district is allowed to require in writing from its teachers.  Specifically, we find the definition of the term "lesson" to be particularly instructive in our analysis.  The term "lesson" as used in section 11.164 has not been defined by the Legislature.  Therefore, we must we apply the ordinary meaning of the term.  *See Monsanto Co. v. Cornerstones Mun. Util.*

---

[8] Although, as further explained below, we conclude that Yselta may require that teachers include the TEKS and TAKS objectives in their lesson plans, we disagree with Yselta's reasoning that they may do so because the administration requires teachers to write those objectives on the board.

[9] Section 11.164(a)(6) describes the format of a lesson plan that a school district may require.  *See id.*  It says that the school district may require a lesson plan "that outlines, in a brief and general manner, the information to be presented during each period at the secondary level."

8

*Dist.*, 865 S.W.2d 937, 939 (Tex. 1993); *Schimmel v. McGregor*, 438 S.W.3d 847, 855–56 (Tex. App.—Houston [1st Dist.] 2014, pet. filed).

Webster's online dictionary defines "lesson" as "an activity that you do in order to learn something; also: something that is taught"; "a single class or part of a course of instruction"; or "something learned through experience." Merriam Webster's Online Dictionary, http://www.merriam-webster.com/dictionary/lesson (last visited March 25, 2015). Using the common everyday definitions of the terms used by the Legislature and applying the definition of the word "lesson" in the context of section 11.164, we conclude that a lesson is something that is taught or an activity that one does in order to learn something. *See TGS–NOPEC Geophysical Co.*, 340 S.W.3d at 441 ("It is a fundamental principle of statutory construction and indeed of language itself that words' meanings cannot be determined in isolation but must be drawn from the context in which they are used."); *see also State v. $1,760.00 in U.S. Currency*, 406 S.W.3d 177, 180–81 (Tex. 2013) ("[W]hen an undefined term has multiple common meanings, the definition most consistent within the context of the statute's scheme applies."). The very nature of a lesson plan by definition encompasses what will be taught to the students in the classroom.[10] *See* Merriam Webster's Online Dictionary, http://www.merriam-webster.com/dictionary/lesson. Thus, under the plain reading of the statute, we conclude

---

[10] In their briefs, in support of their interpretation of section 11.164(a)(6) that information to be presented does not refer only to what is taught in the classroom, Yselta and the Commissioner rely on *Port Arthur Teachers Associations/Texas State Teachers Association v. Port Arthur Independent School District*, a decision by the Commissioner regarding Port Arthur teachers' challenge to lesson plan requirements in that district. However, we believe that decision supports the trial court's conclusion in this case that the information to be presented refers to what will be taught in the classroom. Although the Port Arthur teachers did not challenge the district's lesson plans requirements on the basis that it violated section 11.164(a)(6) because the lesson plans required information that was not presented to the students, the Commissioner in that case, concluded that the "elements [required by the school district in the lesson plans] taken alone and in combination seek *a general description of what is to be taught* not the particulars." (emphasis added).

9

that when the Legislature used the phrase "information to be presented," which describes what may be required in a lesson plan, it intended to prohibit school districts from requiring lesson plans that contain anything other than an outline, which is brief and general, of the information that a teacher plans to teach during a particular class period and the activities the students will do in order to learn the subject matter. As the statute is clear and unambiguous, our analysis ends.[11] *See Combs v. Roark Amusement & Vending, L.P.*, 422 S.W.3d 632, 635 (Tex. 2013) ("This voted-on language is what constitutes the law, and when a statute's words are unambiguous and yield but one interpretation, "the judge's inquiry is at an end.'"); *First Am. Title Ins. Co.*, 258 S.W.3d at 631–32; *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 747 (Tex. 2006) (explaining that in order to give the agency "some deference" in its interpretation of a statute, "the language at issue must be ambiguous; an agency's opinion cannot change plain language").

Therefore, we conclude that the trial court's interpretation of the phrase "information to be presented" as meaning what is taught to the students is consistent with Legislature's intent.[12] Moreover, the Commissioner's interpretation of section 11.164(a)(6) to the extent that it determined that a school district can require information

---

[11] We note that we are able to give effect to the Legislature's intent by relying on the plain meaning of the text. There is no evidence that a different meaning has been supplied by the Legislature, and there is no evidence in the record that enforcing the plain meaning would result in absurdity. *See San Jacinto Title Servs. of Corpus Christi, LLC. v. Kingsley Properties, LP*, 452 S.W.3d 343, 346 (Tex. App.—Corpus Christi 2013, pet. denied) (citing *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010)). We conclude there is nothing absurd about prohibiting school districts from requiring information in a lesson plan other than what is taught in class and the activities used to teach a subject matter, even if this meaning does not comport with Yselta's and the Commissioner's understanding of what must go into a lesson plan.

[12] However, applying the definition of "plan" as used in the statute, we note that it appears that a lesson plan would also include the steps a teacher intends to take to teach the subject matter. None of the parties have argued that any of Yselta's lesson plan requirements constitute the steps a teacher takes when teaching her class.

in a lesson plan that is neither taught to the students nor describes the activities that will be used to teach the subject matter contradicts the statute's plain language.[13] The Legislature has spoken, and section 11.164(a)(6) explicitly states that the school district may only require that a teacher write a lesson plan that outlines the information presented, which by definition includes what is taught and the activities used to teach the lesson. We overrule Yselta's first issue and the Commissioner's first issue complaining that the trial court erred by not deferring to the Commissioner's interpretation of section 11.164(a)(6). The trial court had no duty to determine whether the Commissioner's construction was reasonable and in accord with the statute's plain language.[14] *See R.R. Comm'n*, 336 S.W.3d at 625 (providing that such an analysis is only required if the statute at issue is ambiguous).

Having concluded that the trial court's interpretation of the phrase "information to be presented" is correct, we must now determine whether there is substantial evidence

---

[13] This appears to be the argument made by Yselta and the Commissioner.

[14] Yselta claims that section 11.164(a)(6) is ambiguous because: (1) "the Legislature did not specify exactly how brief and general a lesson plan could be in order to comply"; (2) the Legislature did not "specify what constitutes 'information to be presented', or even how the information to be presented must be used during a specific lesson"; and (3) "the Legislature did not specify how the information to be presented may be referenced or discussed in the actual lesson plan." Yselta cites no authority, and we find none, finding a statute ambiguous because it is not more specific. Moreover, as previously explained, we have been able to determine the Legislature's intent from the statute's plain language, and we disagree that any of the above-mentioned concerns make the statute ambiguous. *See State v. $1,760.00 in U.S. Currency*, 406 S.W.3d 177, 180–81 (Tex. 2013) (explaining that even if an undefined term has multiple common meanings, that does not necessarily make the statute ambiguous and that instead an appellate court will apply the definition most consistent with the context of the statutory scheme).

We also disagree with Yselta that section 11.164(a)(6)'s language could support another reasonable interpretation making it ambiguous because if we interpreted it as Yselta and the Commission argue, section 11.164's prohibition on school district's from requiring anything other than a brief and general lesson plan would be rendered meaningless. School districts would be allowed to argue and prove that a plethora of information must be included in a lesson plan because the teacher presents that information to the students orally or in writing, even if that information is not used to teach the students. For example, if a school district required a teacher to read the daily lunch menu to the students during class, one could argue that the lunch menu is information presented to the students and that the lunch menu must then be included in a lesson plan. That is an absurd result that circumvents the purpose of the statute.

11

to support the Commissioner's decision regarding each of the challenged portions of Yselta's lesson plan requirements applying the trial court's interpretation.[15] We must also address Yselta's and the Commissioner's challenge to the trial court's determination that the Commissioner erred in concluding that Yselta can require that the lesson plans include assessments, the differentiated activities and/or modifications for special populations, and the cognitive level.

## II.    YSELTA'S LESSON PLAN REQUIREMENTS

By their first cross-issue, the Teachers contend that a school district may not "impose requirements for lesson plans that vary from the language of the statute" and that Yselta requires the Teachers to include information in their lesson plans that the statute does not allow. The Teachers argue that under the statute, it is the Teachers and not Yselta who must decide what to include in a lesson plan. Yselta responds that

> [i]f the Court were to endorse the teacher's interpretation, it would mean that teachers in this State would not be required to list any daily lessons, homework, or assessment of students in the actual lesson plan. On its face, this interpretation would undercut our educational system, all for the sole purpose of trimming a few words from a sheet of paper.[16]

The Commissioner points out that although the Teachers made this argument to the trial court, the Teachers did not preserve the argument during the proceeding with the Commissioner. Nonetheless, assuming, without deciding that the issue is preserved, as

---

[15] As previously stated, the term "lesson" is defined as what is taught and an activity that one does in order to learn something. The Teachers have not challenged the Commissioner's decision that the school district may require that a lesson plan contain an outline of the "Lesson Activities/Strategies," which the trial court affirmed. Therefore, we will not address that portion of the Commissioner's and trial court's decisions, and our opinion does not affect that determination. In addition, to the extent that the Teachers are challenging this portion of the lesson plan through their sub-issue to their second and third cross-issues, as further explained below, that sub-issue is not adequately briefed. *See* TEX. R. APP. P. 38.1(i).

[16] We agree with Yselta that school districts can require teachers to write lesson plans; however, section 11.164(a)(6) has limited what a school district can require to be included within those lesson plans.

stated, above, section 11.164 allows a school district to require that a teacher write a lesson plan that includes the information that will be taught to the students. Therefore, we disagree that the statute only allows for teachers to determine what information is to be included in a lesson plan and that a school district cannot provide a template for the teachers to use. Accordingly, we overrule the Teachers' first cross-issue.

By their second and third cross-issues, the Teachers contend that the evidence undisputedly shows that the TEKS and TAKS objectives should not be required in a lesson plan because that information will not be taught to the students. The Commissioner determined that Yselta can require teachers to include the TEKS and TAKS objectives in their lesson plans, which the trial court affirmed. Thus, we must determine whether there is substantial evidence in this record to support the Commissioner's decision that section 11.164(a)(6) allows Yselta to require that the TEKS and TAKS objectives be included in a lesson plan.

By its second, third, and fourth issues, the Commissioner contends that the required sections in Yselta's lesson plan template of assessments, cognitive level, and the differentiated activities/modifications for special populations do constitute information that is taught to the students. By its second and third issues, Yselta states that the Legislature's silence after the Commissioner's decision in another case compels us to conclude that section 11.164 allows Yselta to require that teachers include the "assessments" and "cognitive level" in their lesson plans. By its fourth issue, Yselta contends that the trial court erred by "holding that [the differentiated activities and/or modifications for special populations section, which is] an optional section of the lesson plan[, violates] section 11.164(a)(6)." Specifically, Yselta argues that because the

13

differentiated activities and/or modifications for special populations section of the complained-of lesson plan is optional, "it cannot be a violation of the statute if the statute is to have any meaning" and "[t]o read an optional section as being prohibited by a statute that is only concerned with requirements imposed on a teacher turns the English language upside down." Yselta further argues that the Teachers failed to preserve any complaints concerning the inclusion of differentiated activities and/or modifications for special populations because the Teachers did not argue that an optional portion of the lesson plan template violates section 11.164.[17]

## A. Standard of Review

Whether we should affirm the Commissioner's decision regarding Yselta's lesson plan requirements requires that we review the Commissioner's factual findings; therefore, we must apply a substantial evidence standard of review. *See R.R. Comm'n of Tex. v. Torch Operating Co.*, 912 S.W.2d 790, 792 (Tex. 1995). This is a limited standard of review that gives significant deference to the agency in its field of expertise. *Id.* Substantial evidence review requires no more than a scintilla of evidence to support an agency's determination. *Id.* at 792–93. In addition, "the evidence on the record actually may preponderate against the decision of the agency and nonetheless amount to substantial evidence." *See id.* at 793. "Substantial evidence does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion of fact." *Heritage on San Gabriel*

---

[17] In its appellee brief, Yselta argues that the "Lesson Activities" part of the lesson plan does not violate section 11.164(a)(6). However, the Teachers do not challenge the Commissioner's decision and trial court's judgment affirming it on the basis that this part of the lesson plan violates section 11.164(a)(6). Therefore, we need not address Yselta's argument in that respect. Thus, as previously noted, our opinion does not affect the Commissioner's decision that Yselta may require that teachers include the "Lesson Activities" in their lesson plans.

14

*Homeowners Ass'n v. Tex. Comm'n on Envtl. Quality*, 393 S.W.3d 417, 424 (Tex. App.—Austin 2012, pet. denied) (citing *Lauderdale v. Tex. Dep't of Agric.*, 923 S.W.2d 834, 836 (Tex. App.—Austin 1996, no writ) (quoting *Pierce v. Underwood*, 487 U.S. 552, 564–65 (1988))) (internal quotations omitted).

We presume that the Commissioner's decision is supported by substantial evidence, and the Teachers bear the burden of proving otherwise. *See id.* "The burden is a heavy one—even a showing that the evidence preponderates against the agency's decision will not be enough to overcome it, if there is some reasonable basis in the record for the action taken by the agency." *Id.* In this appeal, our focus is on the trial court's review. *See id.*

**B. The TEKS Objectives**[18]

The evidence shows that the TEKS objectives are used as the foundation to teach a subject matter. For example, TEKS objectives for United States Government class include, among other things, that the students will (1) "explain major political ideas in history such as natural law, natural rights, divine rights of kings, and social contract theory," (2) "identify the characteristics of classic forms of government such as feudalism, liberal democracy, and totalitarianism," (3) "analyze the structure and functions of the legislative branch of government, including the bicameral structure of Congress, the role of committees, ad the procedure for enacting law," (4) "compare the U.S. system of

---

[18] Although the Commissioner obviously did not conclude that the TEKS and TAKS are allowed using the trial court's interpretation of section 11.164, the trial court affirmed the Commissioner's decision that section 11.164(a)(6) allows school districts to require that a lesson plan contain an outline of the TEKS and TAKS objectives. Thus, if we conclude that the trial court is correct in its reasoning to affirm the Commissioner's decision, we will uphold the Commissioner's decision regarding the TEKS and TAKS objectives. *See Heritage on San Gabriel Homeowners Ass'n v. Tex. Comm'n on Envtl. Quality*, 393 S.W.3d 417, 424 (Tex. App.—Austin 2012, pet. denied).

government with other political systems," (5) "analyze advantages and disadvantages of federal, confederate, and unitary systems of government," and (6) "analyze advantages and disadvantages of presidential and parliamentary systems of government." Thus, in this example, it appears that in order for the students to do the above stated goals, the teacher would be required to present information regarding the following: (1) major political ideas in history, including those listed; (2) the characteristics of the classic forms of government listed in the TEKS objective; (3) an explanation of the bicameral structure of Congress, the role of committees in Congress, and the procedure for enacting laws in Congress; (4) the U.S. system of government; (5) other systems of government; (6) "the advantages and disadvantages of federal, confederate, and unitary systems of government"; and "the advantages and disadvantages of presidential and parliamentary systems of government."

Thus, there is more than a scintilla of evidence, as shown in the above example, that supports the trial court's conclusion that the TEKS objectives are taught to the students, and the Commissioner's decision that Yselta has not violated section 11.164(a)(6) by requiring that the TEKS objectives be included in a lesson plan. *See id.* Therefore, because reasonable minds could have reached the Commissioner's conclusion that Ysleta can require TEKS objectives in the lesson plan, we overrule the Teachers' second cross-issue regarding whether under section 11.164(a)(6) Yselta may require teachers to include an outline of the TEKS objectives in the lesson plan. *See id.*

## C.    The TAKS Objectives

To support their argument that the TAKS objectives are not taught to the students, the Teachers point to Adams' testimony that "the 'TAKS objectives' were not within the

16

scope of a 'brief and general' outline of the 'information to be presented.'" Yselta and the Commissioner cite Principal Wade's testimony that "the TAKS [objectives are] the Texas Assessment of Knowledge and Skills. That's the part that assesses whether or not the students have learned the TEKS [objectives]. And so that's the part that's on the test. Those are the test objectives. TAKS objectives is the same as the TEKS—as the test objectives" and "Now, the lesson objectives, in a lesson, you may not be able to teach the entire TAKS objective, so your lesson objective is more specific to what you are teaching on a particular day. And so that alignment has to be there in order to ensure that the students are learning what they need to learn in order to pass the test." Yselta further argues that because it requires that the Teachers identify for the students the TAKS objectives for the students by writing them on the chalk board, the TAKS are "information to be presented" within the meaning of the statute.

There are several lesson plans in the record with citation to the TAKS objectives. For example, in a World Geography lesson plan entitled "Latin America," one teacher listed the following TAKS objectives: (1) "*Analyze* the effects of physical and human geographic patterns and processes on events in the past and *describe* their effects on present conditions, including significant physical features environmental conditions that influenced migration patterns in the past and shaped the distribution of culture groups today"; (2) "*Assess* how people's changing perceptions of geographic features have led to changes in human societies"; (3) "*Analyze* political economic social demographic data to determine the level of development"; (4) *Locate* settlements and *observe* patterns in the size and distribution of cities using maps"; (5) "*Compare* ways that humans depended on[,] adapt to[, or] modify the physical environment"; (6) "*Compare* the ways that humans

17

satisfy their basic needs through the production of goods and services"; (7) "*Describe* the impact of general processes such as migration[,] war[,] trade[,] independent invention[,] diffusion of ideas[, and] motivations on cultural change"; (8) "*Evaluate* the significance of major technological innovations, including fire[,] steam power[,] diesel machinery[, and] electricity that have been used to modify the physical environment"; and (9) "*Describe* the impact of new technologies markets revised perceptions of resources." (Emphasis in original).

The teacher stated that the activities and strategies to be used in this lesson include the following: (1) "Physical map of Central America & Caribbean"; (2) "Go over Ch. 9"; (3) "Read article 'Food Migration'"; (4) "Create collage of NEW & Old World foods"; (5) "Constitution Day"; (6) "Continue to work on Map": (7) "Film: Incas, Aztec, or Maya"; (8) "Read Hispanic Heritage stories"; (9) "Read Ch. 10 sec. 1 Define vocabulary ch.10"; (10) "Turn in Map of Central America & Caribbean"; (11) "Go over Ch. 10 finish reading"; (12) "Reward and Remediation"; (13) "Cholera lesson"; (14) "Review" and (15) "Grade Notebooks." The stated lesson objectives included the following: (1) "Students will create a map of Central America & the Caribbean showing physical features"; (2) "Students will read about the food migration when the new and old world met and create a collage of foods"; (3) "Students will read and define vocabulary"; (4) "Students will organize their notebooks"; and (5) "Students will study for the common assessment on unit."[19]

The lesson plan obviously concerns Latin America and involves reading and learning about "food migration," the geography of Central America and the Caribbean, the

---

[19] This lesson plan also includes a list comprising of approximately half a page of TEKS objectives. The font for the TEKS and the TAKS is smaller than the font for other portions of the complained-of lesson plan.

differences between the Incas, the Aztecs, and the Maya, and cholera in relation to Latin America. Based on the TAKS objectives, the lesson would probably also include, among other possible things, information about (1) the physical and human geographic patterns and processes of Latin America and the Caribbean, (2) the significant physical features and environmental conditions that have influenced migration patterns in the past, in Latin America and the Caribbean, and shaped the distribution of culture groups today in Latin America and the Caribbean, (3) political, economic, and social demographic data of Latin America and the Caribbean, (4) settlements in Latin America and the Caribbean, (5) "ways that humans [in Latin America and the Caribbean] depended on[,] adapt to[, or] modif[ied] the physical environment," (6) "the ways that humans satisf[ied] their basic needs through the production of goods and services" in Latin America and the Caribbean, (7) the "general processes such as migration[,] war[,] trade[,] independent invention[,] diffusion of ideas[, and] motivations on cultural change" in Latin America and the Caribbean, (8) "fire[,] steam power[,] diesel machinery[, and] electricity" used in Latin America and the Caribbean, and (9) new technologies of Latin America and the Caribbean.

Thus, there is more than a scintilla of evidence that the TAKS objectives include information that will be taught to the students in a lesson. *See id.* Therefore, the evidence supports the trial court's judgment that the TAKS objectives are taught to students. Moreover because reasonable minds could have reached the Commissioner's conclusion that Ysleta can require TAKS objectives in the lesson plan, we conclude that substantial evidence supports the Commissioner' decision in that respect. *See id.* Accordingly, we overrule the Teachers' third cross-issue to the extent that they contend that section

19

11.164(a)(6) prohibits Yselta from requiring that the TAKS objectives be included in their lesson plans.[20]

## D. Resources and "the Activity"

By a sub-issue to their second and third cross-issues, the Teachers argue that "requirements 'to type in the resource(s) the students will be using along with the activity' call for more than 'a few words,' and require information that is neither 'brief' nor 'general.'" The Teachers focus on "the number of words in these items on the sample plan, as well as its inclusion of the author name as part of the 'resource(s)' to be listed." The Teachers do not provide any citation to the record or legal analysis regarding how requiring teachers to list the resources used by the students "along with the activity" is not brief or general. Thus, we are unable to reverse the trial court's ruling on that ground. *See* TEX. R. APP. P. 38.1(i). We overrule the Teachers' sub-issue to the extent that they make the above argument.[21]

---

[20] We note that the Teachers have not argued that Yselta is not allowed to require them to include the TEKS and TAKS objectives because a school district may only require an outline, written in a brief and general manner, of the lesson plan. Thus, we cannot address that issue. However, the Teachers state in their appellants' brief that Yselta has already agreed to "delete the requirement that the TEKS be reprinted verbatim."

[21] In their briefs, all parties have provided extensive argument regarding whether Ysleta's lesson plan requirements violated section 11.164(a)(6) because the lesson plans were not brief and general and refer to the Commissioner's decision concluding that the plans were brief and general. Among other things, the Teachers argue that the Commissioner misapplied the definitions of brief and general; Yselta and the Commissioner argue, among other things, that the Commissioner's decision utilized the correct definitions of brief and general. However, in reversing the Commissioner's decision, the trial court limited the basis for its judgment to a conclusion that the statute's use of "the information to be presented" meant the information to be taught to the students. The trial court did not reverse on the basis that Yselta's requirements were not brief or general.

The trial court did, however, affirm the Commissioner's decision that requiring teachers to include the TEKS and TAKS objectives and the strategies used is information presented to the students and that requiring those items in a lesson plan did not violate section 11.164(a)(6)'s mandate that the outline of lesson plans be brief and general. The Teachers do not argue in their cross-issues that requiring the TEKS and TAKS objectives violates section 11.164(a)(6) because the lesson plan would not be brief or general. The Teachers only argue that they need not include the TEKS and TAKS objectives in their lesson plans because those objectives are not taught to the students. The Teachers only assert that the resources and activities requirement in the lesson plans does not constitute a brief and general outline. However, as

**E.    Assessments**

By its second issue, Yselta argues that "[a]bsent some strong indication from the Legislature that assessment of student performance is wholly prohibited, the trial court should have deferred to the Commissioner's interpretation" of section 11.164(a)(6) that Yselta can require teachers to include the assessments in the lesson plan.  In arguing that we must uphold the Commissioner's decision that Yselta can require that teachers must include a description of the assessments used in the lesson plans, Yselta relies solely on its argument that the trial court's interpretation of section 11.164(a)(6) is erroneous.  Yselta does not argue that even assuming that the trial court's interpretation is correct, assessments are "taught" to the students.  Accordingly, because we have already concluded that the trial court's interpretation of section 11.164(a)(6) is correct, we overrule Yselta's second issue.

The Commissioner, on the other hand, argues, by its second issue, that the record "demonstrates that assessments are information that will be presented to students" because "[t]he teacher will present the tests to the students."  We disagree that by merely presenting the assessments to the students, assessments are information taught to the students or that the assessments are activities that the students do in order to learn something.  The Commissioner states, "[A] review of the record shows that assessment is directly germane to the purpose of a lesson plan *by showing how the Teacher will confirm mastery* of the lesson."  In other words, the teacher will assess the students' understanding of the information that has been presented to the students by using an

---

explained above, the Teachers have not met their appellate burden of establishing their assertion.  *See* TEX. R. APP. P. 28.1(i).

21

assessment. However, the Commissioner does not set out which evidence supports its argument. *See id.* R. 38.1(h), (i). Therefore, because the Commissioner has not met its appellate burden of showing that there is substantial evidence to support a conclusion that assessments are taught to the students, we overrule the Commissioners' second issue.

## F.     Cognitive Level

By its third issue, Yselta contends that the Commissioner's decision in *Port Arthur* did not prompt the Legislature to act; therefore, we must "presume that the Legislature intend[ed] that the same construction should continue to apply to" section 11.164. Specifically, Yselta argues that in *Port Arthur*, the Commissioner determined that a school district may require "the level of Bloom's [T]axonomy" to be included in a teacher's lesson plan. Yselta explains that "[u]nder Bloom's Taxonomy, a student reaches the 'application level' when she moves beyond basic comprehension and actually begins to apply what she has learned." However, the Commissioner in *Port Arthur* did not address whether requiring teachers to include "the level of Bloom's Taxonomy" violates section 11.164 because Bloom's Taxonomy is not taught, as the trial court did in this case. Therefore, we cannot conclude that the Legislature's silence in this case leads to any presumptions in our construction of section 11.164.

Yselta further argues that "[e]ven assuming that the trial court should have focused only on what is 'taught to students[,]' its reasoning ignores evidence in the record." Specifically, Yselta points out that Principal Wade said that the teacher appraisal system in Texas "requires that lesson[s] be presented at the application level or higher." According to Yselta, "[u]nder Bloom's Taxonomy, a student reaches the 'application level'

when she moves beyond basic comprehension and actually begins to apply what she has learned."[22]

Principal Wade also stated, "And so when the teachers are preparing lessons in the classroom, it's always a good thing for them to have in the back of their mind the [cognitive level] of the lesson that they are planning for their students, to ensure that they are learning at higher levels and to ensure that they are not just at low levels, recollection or memorizing or things like that." When asked how the cognitive level "relate[s] to the information presented," Principal Wade responded, "Well, that is the information to be presented. You want to make sure that any information that you present is not presented at a—at a very low level. And, also, the—you know, the scope and sequence also reflects cognitive demand."[23]

We disagree with Yselta that Principal Wade testified that the cognitive level is taught to the students. Instead, Principal Wade explained that the lessons taught must adhere to a higher level of cognition. Therefore, we cannot conclude that there is substantial evidence to support the Commissioner's decision that Yselta can require that teachers include cognitive levels in their lesson plans. We overrule Yselta's third issue.

By its third issue, the Commissioner makes a similar argument stating that "Dr. Wade testified that requirement that the Teachers check boxes indicating the cognitive level of the lessons "'is information to be presented.'" The Commissioner again urges us to apply the Commissioner's determination of the meaning of "information presented." However, having already determined that the trial court's interpretation of section 11.164

---

[22] Yselta does not provide citations to the record wherein evidence concerning Bloom's Taxonomy was presented to the lower court, and we have found none.

[23] The record does not reflect what Principal Wade meant by phrase "the scope and sequence."

applies and that the Commissioner's interpretation need not be followed in this case, we overrule the Commissioner's third issue.

## G.     "[D]ifferentiated [A]ctivities/[M]odifications for [S]pecial [P]opulations"

By its fourth issue, Yselta states that this section of its lesson plan template is "optional."[24]  Thus, according to Yselta, because the section is optional, the trial court erred in concluding that it violates section 11.164(a)(6).[25]  We conclude that Yselta has judicially admitted that this section of the lesson plan is optional.[26]  *See Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 568 (Tex. 2001) ("Assertions of fact, not plead in the alternative, in the live pleadings of a party are regarded as formal judicial admissions[, and a] judicial admission that is clear and unequivocal has conclusive effect and bars the admitting party from later disputing the admitted fact.") (internal quotations omitted).  Therefore, Yselta does not require the Teachers to list the differentiated activities and/or modifications for special populations in their lesson plans.  Because this section is optional and the Teachers are not required to include it in the lesson plans, the Commissioner's conclusion that Yselta has not violated section 11.164 by *requiring* the

---

[24] Yselta further argues that the Teachers failed to preserve their challenge to this section of the lesson plan template because they did not object to these optional requirements in their motion for rehearing.  The Teachers agree that they did not specify in their motion for rehearing that this section of the template is optional.  However, they point out that Yselta had not informed them prior to this appeal that this section is optional.

[25] Yselta does not argue that it can require teachers to include the differentiated activities and/or modifications for special populations section in a lesson plan because they are presented to the students. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 568 (Tex. 2001) (explaining that an assertion of fact that is pleaded in the alternative does not constitute a judicial admission).

[26] The elements commonly recited for a judicial admission are:  (1) a statement made during the course of a judicial proceeding; (2) that is contrary to an essential fact or defense asserted by the person making the admission; (3) that is clear, deliberate, and unequivocal; (4) that, if given conclusive effect, would be consistent with public policy; and (5) that is not destructive of the opposing party's theory of recovery.

*Murphy v. Williams*, 430 S.W.3d 613, 618 (Tex. App.—Dallas 2014, pet. denied).

Teachers to include this section in their lesson plans is not supported by substantial evidence. Therefore, the trial court's judgment reversing the Commissioner's decision is not erroneous on that basis. We overrule Yselta's fourth issue.

By its fourth issue, the Commissioner contends that there is substantial evidence that the differentiated activities and modifications to assignments for special student populations is part of the information presented to students."[27] However, because Yselta has judicially admitted that the differentiated activities and/or modifications for special populations section of the lesson plan is optional and not required, we overrule the Commissioner's fourth issue as moot.

### III. CONCLUSION

We affirm the trial court's judgment.

**/s/ Rogelio Valdez**
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
13th day of April, 2015.

---

[27] Specifically, the Commissioner points to evidence that the teacher may modify a lesson for a special population student by presented a "thinking map to help students grasp the concepts of the lessons" or "the teacher may require a student's lesson to include a circle map, rather than a more complex double global map, as an accommodation for a student with a learning disability." The Commissioner states that another accommodation may include the use of an English/Spanish dictionary.

25